703 So.2d 883 (1996)
Ex parte Barbara MARTIN and George Martin.
(In re Barbara MARTIN and George Martin
v.
SOUTHERN ENERGY HOMES, INC., et al.).
1951420.
Supreme Court of Alabama.
November 8, 1996.
Rehearing Overruled October 3, 1997.
*884 Richard Horsley of Dillard, Goozee & King, Birmingham, for petitioners.
John Martin Galese and Jeffrey L. Ingram of John Martin Galese, P.A., Birmingham, for Southern Energy Homes, Inc.
BUTTS, Justice.
The plaintiffs, George and Barbara Martin, petition for a writ of mandamus directing the Circuit Court of Shelby County to vacate its order granting the motion of Southern Energy Homes, Inc., to compel arbitration and to stay proceedings pending arbitration of the plaintiffs' claims against that defendant.

I.
The Martins sued Blue Ribbon Homes, Inc., doing business as Oak Tree Mobile Homes, and its agent David Walters, alleging fraud, negligence, wantonness, breach of contract, and breach of warranty, all arising from their purchase of a mobile home from Blue Ribbon Homes. The Martins also sued Southern Energy Homes, Inc., the manufacturer of the mobile home, alleging that it had breached the limited warranty it issued on the mobile home. In its answer to the complaint, Southern Energy Homes stated that it was not "in privity with" the contract under which the Martins purchased the mobile home from Blue Ribbon Homes, and it initiated discovery.
Shortly thereafter, however, Blue Ribbon Homes and Walters moved to compel arbitration of the Martins' claims, pursuant to an arbitration agreement contained within the contract for the purchase of the mobile home. Although it was admittedly not a party to this contract, Southern Energy Homes also moved to compel arbitration pursuant to the arbitration clause. The trial court subsequently granted all of the defendants' motions for arbitration. The plaintiffs' petition here relates only to the granting of Southern Energy Homes' motion to compel arbitration.
A writ of mandamus is an extraordinary remedy and requires a showing that there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court. Ex parte Edgar, 543 So.2d 682 (Ala.1989). We note that the last two requirements have been met from the outset; a petition for a writ of mandamus is the proper means to challenge a trial court's order granting a motion to compel arbitration. Ex parte Phelps, 672 So.2d 790 (Ala.1995).

*885 II.
The Martins negotiated with Blue Ribbon Homes' agent, David Walters, for the purchase of a mobile home. They signed a contract that included a document entitled "Arbitration Agreement between Blue Ribbon Homes, Inc. and (Purchaser)." The document was dated "6-23-95" and the names "George and Barbara P. Martin" were written in, to indicate that they were the purchasers. The agreement then stated, in pertinent part:
"Any controversy or claim arising out of or relating to that contract, or breach thereof, between Blue Ribbon Homes, Inc. and __________, dated __________, shall be settled under common law arbitration, in accordance with the rules of the American Arbitration Association.[1]

"Blue Ribbon Homes, Inc. and Purchaser acknowledge and agree the mobile home sold by Blue Ribbon Homes, Inc. and purchased by purchaser has been in interstate commerce.

"Either party shall have 60 days from the time the controversy, dispute or difference of opinion arose to make a written demand for arbitration by filing a demand in writing to the other.
"One arbitrator shall be chosen by Blue Ribbon Homes, Inc., and the other by said purchaser, and an umpire shall be chosen by the two arbitrators before they enter upon arbitration.
"....
"The decision of the arbitrators shall be final and binding on both parties; but failing to agree, they shall call upon the umpire and the decision of the umpire shall be binding upon both parties.
"....
"In the event, two arbitrators are chosen by one party, as provided above, the expenses of the arbitrators, the umpire and the arbitration shall be equally divided between the two parties."
(Emphasis added.) With their mobile home, the Martins received from Southern Energy Homes a written limited warranty, which expressly stated in boldface:
"This warranty gives you specific legal rights and you may have other rights which may vary from state to state. Southern Energy Homes, Inc. is not liable for any agreement or commitment made by any employee, dealer, or agent other than those expressly set forth in this warranty."

(Emphasis added.) This warranty did not refer to the agreement between the Martins and Blue Ribbon Homes.

III.
The Martins argue that the trial court erred in compelling arbitration of their claims against Southern Energy Homes, which was not a signatory to the arbitration agreement between them and Blue Ribbon Homes. As the Martins point out, the arbitration agreement names only two parties and is signed only by the Martins, an agent for Blue Ribbon Homes, and two witnesses. Further, in setting out the methods by which arbitration will be carried out, the agreement repeatedly refers to the "two parties" and "both parties," further evidencing the fact that the agreement was only between Blue Ribbon and the Martins, without reference or application to another party.
Southern Energy Homes argues, however, that this Court's recent decision in Gates v. Palm Harbor Homes, Inc., 675 So.2d 371 (Ala.1996), has made it unnecessary for a party to sign an arbitration agreement in order to come within its protection. In Gates, the plaintiffs purchased from Bilo Homes, Inc., a mobile home represented to be a "new" mobile home, after negotiations with Bilo Homes' general manager. They signed a retail installment contract that provided, in pertinent part:
"All disputes, claims, or controversies arising from or relating to this Contract or the relationships which result from this Contract, or the validity of this arbitration *886 clause or the entire Contract, shall be resolved by binding arbitration...."
(Emphasis added.)
After purchasing the mobile home, the plaintiffs learned that it was not new, but had been sold previously to another buyer. They then sued Bilo Homes, as the seller of the mobile home, and also Palm Harbor Homes, Inc., as its manufacturer, alleging, among other things, breach of express and implied warranties, fraud, and negligent or wanton installation of the home.
Both Bilo Homes and Palm Harbor Homes moved to compel arbitration, based upon the arbitration agreement contained within the purchase contract. The trial court granted their motions, and the Gateses petitioned this Court for a writ of mandamus directing the trial court to vacate its order granting the arbitration motions, arguing that Palm Harbor Homes was not a signatory to the purchase agreement and therefore could not invoke the arbitration clause contained therein.
To determine the scope of that arbitration clause, the Gates Court first noted that the issue was a matter of contractual interpretation, to be resolved by considering the intent of the parties to the agreement. Gates at 374. The Court recognized that the language of the arbitration clause was particularly broad, encompassing not only the "disputes, claims, or controversies arising from" the contract, but also "the relationships" that resulted from it. The Court concluded, based upon the agreement's expansive language as it applied to the plaintiffs' claims, that the trial court had properly determined that the claims against Palm Harbor were arbitrable, despite the fact that Palm Harbor had not signed the agreement containing the arbitration clause.
The arbitration clause in Gates clearly contemplated arbitration of claims brought by the signatories to the agreements and also arbitration of claims brought by other, unnamed parties, if those claims arose from or related to the contract or the "relationships" that resulted from the contract.[2] Nothing in the arbitration agreement the Martins signed indicates that its scope was intended to be so broad; the agreement specifically names only the Martins and Blue Ribbon Homes as parties to the agreement, and it applies the arbitration procedures to "both" parties or to "either" party.
This Court has recently held that a nonsignatory to a limited arbitration clause specifically referencing only the signing parties is not sufficiently broad to encompass a nonsignatory defendant. In Ex parte Jones, 686 So.2d 1166 (Ala.1996), the plaintiff Jones entered into a security agreement with The Money Tree, Inc., to finance the purchase of an automobile. One provision of this agreement required the plaintiff to maintain insurance on the car; however, it was Money Tree's duty to procure this insurance and to include its premium price in the amount it financed for the plaintiff. The security agreement named Money Tree as the "creditor" and the plaintiff as the "debtor," and included a clause whereby "all disputes, controversies or claims of any kind and nature between creditor and debtor arising out of or in connection with" the agreement would be submitted to arbitration.
Money Tree thereafter contracted with First Colonial Bank to obtain the insurance for the plaintiff's car, as it was required to do under the security agreement with the plaintiff; however, the contract between Money Tree and First Colonial did not contain an arbitration clause, nor did it refer to the arbitration clause contained within Jones's security agreement with Money Tree. The plaintiff's car was subsequently destroyed by fire and he then learned that the insurance Money Tree had procured for him from Colonial Bank was inadequate.
In the ensuing lawsuit, both Money Tree and First Colonial sought to compel arbitration of the plaintiff's claims, pursuant to the arbitration clause in the security agreement between the plaintiff and Money Tree. The trial court granted both motions, and Jones petitioned this Court for a writ of mandamus, arguing that First Colonial could not compel *887 arbitration under the terms of the security agreement that it was not a party to and had not signed.
In reversing the trial court's order compelling arbitration of Jones's claims against First Colonial, the Court emphasized that the arbitration clause expressly limited its scope to those disputes, controversies, or claims that arose between the "creditor and debtor," i.e., Money Tree and Jones, as they were named in the security agreement. Because the arbitration clause set these limits on its face, the Court determined that the parties had not intended to include any additional parties in the agreement.
In both Jones and Gates, the Court applied the well-settled rule that the enforcement of arbitration agreements, while favored by federal law as a sound public policy, must be governed by the plain terms of the agreements themselves  that the courts are not to twist the language of a contract to achieve a result favored by federal policy but contrary to the intent of the parties. Goldberg v. Bear, Stearns & Co., 912 F.2d 1418 (11th Cir.1990).
It is clear that only the Martins and Blue Ribbon Homes negotiated and signed the arbitration agreement at issue, and it is clear that that agreement refers only to the Martins and Blue Ribbon Homes. Moreover, the Martins' claims against Southern Energy Homes arise from the limited warranty that it issued on the mobile home, by which, on its face, Southern Energy Homes disclaimed any liability under the purchase agreement; it cannot now seek protection under that agreement. Because Southern Energy Homes was not within the scope of the arbitration agreement, the Martins have a clear legal right to an order directing the trial court to set aside its order compelling arbitration of their claims against that defendant. The Martins' petition for the writ of mandamus is therefore granted.
WRIT GRANTED.
SHORES, HOUSTON, KENNEDY, and COOK, JJ., concur.
ALMON, J., concurs in the result.
HOOPER, C.J., and MADDOX, J., dissent.
HOOPER, Chief Justice (dissenting).
The plaintiffs Barbara and George Martin ask this Court for a writ of mandamus ordering the trial court to vacate its order compelling them to arbitrate their dispute with Southern Energy Homes. I respectfully dissent from the majority's decision to grant the writ of mandamus, which relieves the Martins of their obligation to arbitrate their claims against Southern Energy Homes.
The Martins purchased a mobile home from Blue Ribbon Homes. When purchasing the home, the Martins signed a purchase contract with Blue Ribbon Homes that contained an arbitration clause requiring that "[a]ny controversy or claim arising out of or relating to that contract, or breach thereof, between Blue Ribbon Homes, Inc., and [George and Barbara Martin], dated [6-23-96], shall be settled under common law arbitration." The Martins also purchased, in conjunction with their mobile home, a oneyear limited warranty from Southern Energy Homes. The contract with Southern Energy Homes did not explicitly require arbitration, and it disclaimed any liability under the contract between Blue Ribbon Homes and the Martins. On January 19, 1996, the Martins sued Blue Ribbon Homes, its employee David Walters, and Southern Energy Homes, alleging fraud, suppression and deceit, breach of express and implied warranties, negligence, bad faith, misappropriation of money, and conspiracy. The trial court ordered arbitration to resolve all disputes between the plaintiffs and the defendants. The Martins seek review of the trial court's order, arguing that the trial court erred in compelling arbitration of their claims against Southern Energy Homes, who was not a signatory to the contract between the Martins and Blue Ribbon Homes.
The Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-15 (1982), preempts state law and governs all written arbitration agreements appearing in contracts that involve interstate commerce. Allied-Bruce Terminix Companies v. Dobson, 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995); Maxus, Inc. v. Sciacca, 598 So.2d 1376 (Ala.1992). The arbitration agreement between the Martins *888 and Blue Ribbon Homes clearly falls within the scope of the FAA because there is a written arbitration agreement and the sale of the mobile home, as stated in the contract in which that agreement appears, involves interstate commerce.
The FAA establishes a strong policy favoring arbitration. Moreover, under the FAA, there is a presumption that an ambiguity as to the scope of an arbitration clause should be resolved in favor of arbitration. Volt Information Sciences, Inc. v. Trustees of Stanford University, 489 U.S. 468, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989); Allied-Bruce Terminix Companies v. Dobson, 684 So.2d 102 (Ala.1995) (Hooper, C.J., concurring specially). Therefore, any ambiguity in this contract as to the scope of its coverage should be resolved in favor of compelling arbitration.
Although Southern Energy Homes is not a party to the contract containing the arbitration agreement, several courts, including this Court, have held that a nonsignatory to a contract may enforce an arbitration agreement contained in the contract. Gates v. Palm Harbor Homes, Inc., 675 So.2d 371 (Ala.1996); Thomson-CSF, S.A. v. American Arbitration Association, 64 F.3d 773 (2d Cir. 1995); Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc., 10 F.3d 753 (11th Cir.1993); McBro Planning & Development Co. v. Triangle Electrical Constr. Co., 741 F.2d 342 (11th Cir.1984). Relying on a theory of estoppel, these courts have allowed nonsignatories to compel arbitration where there is a close relationship between a signatory and the nonsignatory and a close connection between the claims subject to the arbitration clause and the nonsignatory's obligations and duties under the contract. Sunkist, 10 F.3d at 757. A finding that the claims are related is justified when the claims are "intimately founded in and intertwined with" the contract containing the arbitration clause. 10 F.3d at 758.
All of the Martins' claims as to both Blue Ribbon Homes and Southern Energy Homes relate to the same transaction, the sale of a mobile home. But for the contract between the Martins and Blue Ribbon Homes, there would never have been a contract between the Martins and Southern Energy Homes. Therefore, the claims the Martins assert against Southern Energy Homes appear to arise out of the underlying mobile home sales contract that contains the arbitration agreement and, accordingly, should be subject to that agreement.
The facts of this case are similar to those in Gates v. Palm Harbor Homes, supra, where this Court held that a nonsignatory to an arbitration agreement could compel arbitration. In Gates the purchaser of a mobile home sued the mobile home dealer and the mobile home manufacturer, alleging misrepresentation, concealment of material fact, and breach of warranty, all of which were asserted against both the dealer and the manufacturer. The installment sales contract between the purchaser and the dealer contained an arbitration clause specifically requiring that all claims arising from or relating to the contract "or the relationships which result from this contract" be arbitrated. 675 So.2d at 373. This Court concluded that because all of the claims made by the Gateses related to the installment sales contract that contained the arbitration agreement, the trial court could compel arbitration of the claims against the nonsignatory mobile home manufacturer. In this situation, as in Gates, in each count of the complaint the plaintiffs make joint claims against the defendants Blue Ribbon Homes and Southern Energy Homes and do not attempt to distinguish these two defendants. Therefore, the claims against Southern Energy appear to arise out of and relate to the mobile home sales contract between Blue Ribbon Homes and the Martins. Arbitration is appropriate.
The majority, however, attempts to distinguish this Court's decision in Gates by focusing on the fact that in Gates the arbitration clause stated that arbitration was required for any "relationships which result from [the] contract." In this case the arbitration clause does not use language identical to that used in the Gates arbitration clause. The arbitration clause agreed to and signed by the Martins says that they will settle by arbitration "[a]ny controversy or claims arising out of or relating to that contract, or breach thereof between Blue Ribbon Homes, Inc.," and the *889 Martins. Therefore, the majority concludes that the arbitration of claims against anyone other than Blue Ribbon Homes is not contemplated within the clause. I believe that the language of this contract reaches the relationship between the Martins and Southern Energy Homes. Application of the majority's narrow reading of Gates to the facts of this present case violates the FAA's policy favoring arbitration and the presumption in favor of arbitration that courts should accord to such agreements.
In issuing the writ, the majority relies on this Court's recent decision in Ex parte Jones, 686 So.2d 1166 (Ala.1996), which also involved nonsignatories. In Jones, on rehearing ex mero motu, this Court withdrew its original opinion, which had ruled in favor of compelling arbitration. The substituted opinion held that the nonsignatory could not compel arbitration. The majority noted that the arbitration clause in question referred only to the specific parties by name and to the "creditor" and the "debtor." Because the clause was so limited, this Court held that a nonsignatory defendant could not compel arbitration. Again, this narrow reading goes against the FAA's policy favoring arbitration in the case of ambiguous agreements. I think Justice Maddox's dissent in Jones, in which I concurred, presents the correct analysis. Justice Maddox's dissent, consistent with this Court's original opinion in Jones, would hold that a nonsignatory can enforce an arbitration agreement in situations in which the claims against the nonsignatory are "founded on and are intertwined with the facts surrounding the underlying contract that contains the arbitration clause." 686 So.2d at 1169.
The Martins' purchase of a mobile home limited warranty in conjunction with the purchase of a mobile home was essentially part of the purchase transaction. The two agreements were made simultaneously, and the limited warranty would not have been purchased but for the purchase of the mobile home. The Martins made identical claims against Blue Ribbon Homes and Southern Energy Homes. Therefore, the claims against Southern Energy are "founded on and are intertwined with" the contract between Blue Ribbon Homes and the Martins. Because of this connection, and because of the FAA policy favoring arbitration, I believe that the trial court properly ordered arbitration of the Martins' claims against Southern Energy Homes. I must, therefore, respectfully dissent.
MADDOX, Justice (dissenting).
The plaintiffs sued the manufacturer of a mobile home that was sold to them by a dealer, who was also made a defendant, alleging that the manufacturer had made representations about the mobile home that were false and that they relied upon them to their detriment.
From a reading of the complaint, it is obvious that any and all of the alleged misrepresentations that form the basis for the plaintiffs' claims against the manufacturer were made by the dealer as the seller of the mobile home and were not made directly by the manufacturer; consequently, each of the claims made by the plaintiffs were intimately founded in and intertwined with the underlying contract the plaintiffs made with the dealer and are included in the scope of the arbitration agreement they executed.
The majority holds that the plaintiffs are not bound to arbitrate their dispute with the manufacturer, because the manufacturer was not a signatory to the contract. That holding, in my opinion, is not in accordance with federal decisions interpreting the scope of the Federal Arbitration Act ("F.A.A."), 9 U.S.C. § 1 et seq. That Act provides, in pertinent part:
"A written provision in any ... contract evidencing a transaction involving interstate commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist in law or in equity for the revocation of any contract."
9 U.S.C. § 2. Under 9 U.S.C. § 3, a party may seek a stay of proceedings pending arbitration and, in order to do so, must show (1) that a valid written arbitration agreement exists; (2) that the issues in the action are *890 referable to arbitration under the agreement; and (3) that the party is not in default in seeking arbitration.
Under the provisions of § 2 of the F.A.A., a party must show that the agreement in question involves interstate commerce. Allied-Bruce Terminix Companies, Inc. v. Dobson, 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995). In this particular case, neither party disputes that a valid written arbitration agreement is in existence and that that agreement appears in a contract involving interstate commerce. In fact, there could be no argument on that point, because the United States Supreme Court in Allied-Bruce Terminix held that the F.A.A.'s reach coincided with that of the Commerce Clause. Allied-Bruce Terminix, 513 U.S. at 265, 115 S.Ct. at 835. The ultimate question in this case is whether one must be a signatory to a contract in order for the provisions of the F.A.A. to apply to it. Several federal courts have addressed this issue and have held, based upon the theory of estoppel, that "[a] signatory was bound to arbitrate with a nonsignatory at the nonsignatory's insistence because of `the close relationship between the entities involved,' as well as the relationship of the alleged wrongs to the nonsignatory's obligations and duties in the contract ... and [the fact that] the claims were `intimately founded in and intertwined with the underlying contract obligations.' " Thomson-CSF, S.A. v. American Arbitration Ass'n, 64 F.3d 773, 779 (2d Cir. 1995); see also, Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc., 10 F.3d 753, 757 (11th Cir.1993), cert. denied, 513 U.S. 869, 115 S.Ct. 190, 130 L.Ed.2d 123 (1994); McBro Planning & Dev. Co. v. Triangle Elec. Constr. Co., 741 F.2d 342, 344 (11th Cir. 1984); J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A., 863 F.2d 315, 320-21 (4th Cir.1988).
It appears clear to me that federal courts have been "[w]illing to estop a signatory from avoiding arbitration with a nonsignatory when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed." Thomson, 64 F.3d at 779. Why does the majority allow the Martins, as signatories to the agreement to buy the mobile home from a dealer, to avoid arbitration when the alleged wrongs over which they have sued  alleged misrepresentations by a manufacturer  are inextricably intertwined with the agreement they signed with the dealer? See my dissent in Ex parte Jones, 686 So.2d 1166, at 1168 (Ala.1996).

On Application for Rehearing
BUTTS, Justice.
APPLICATION OVERRULED.
ALMON, SHORES, HOUSTON, KENNEDY, and COOK, JJ., concur.
HOOPER, C.J., and MADDOX, J., dissent with opinion.
MADDOX, Justice, dissenting.
I wrote a dissenting opinion on original deliverance, but in view of the fact that the majority elects to overrule the application for rehearing without addressing the issues Southern Energy Homes raises in it, I elect to address some of the issues raised by Southern Energy in its application for rehearing.
From a reading of the complaint, it is obvious that any and all of the alleged misrepresentations that form the basis for the plaintiffs' claims against the manufacturer were made by the dealer as the seller of the mobile home and agent of the manufacturer and were not made directly by the manufacturer; however, each of "[t]he defendants acted in concert and conspiracy to commit those wrong[s] set forth ... injuring and damaging the plaintiffs." Consequently, each of the claims made by the plaintiffs was founded on, and was intimately intertwined with, the underlying contract that the plaintiffs signed with the dealer/agent, which contained the arbitration clause.
The majority opinion states: "The Martins sued Blue Ribbon Homes ... and its agent David Walters, alleging fraud, negligence, wantonness, breach of contract, and breach of warranty .... The Martins also sued Southern Energy Homes ..., alleging that it had breached the limited warranty it issued on the mobile home." 703 So.2d at 884. *891 The majority's statement that the claim against Southern Energy Homes was solely a claim alleging the breach of a limited warranty is inaccurate. Southern Energy called this inaccuracy to the attention of the Court, but, unfortunately, it was not corrected.
The majority, in overruling the application for rehearing, continues to hold that the plaintiffs are not bound to arbitrate their dispute with the manufacturer, because the manufacturer was not a signatory to the contract. That holding, in my opinion, is not in accordance with federal decisions interpreting the scope of the Federal Arbitration Act ("F.A.A."), 9 U.S.C. § 1 et seq., and in my opinion it is inconsistent with the holding in Ex parte Gray, 686 So.2d 250 (Ala. 1996), a case that is factually similar to this one.
The F.A.A. provides, in pertinent part:
"A written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist in law or in equity for the revocation of any contract."
9 U.S.C. § 2. Under 9 U.S.C. § 3, a party may seek a stay of proceedings pending arbitration, by showing (1) that a valid written arbitration agreement exists; (2) that the issues in the action are "referable to arbitration under [the] agreement"; and (3) that the party is not in default in seeking arbitration.
Under the provisions of § 2 of the F.A.A., a party seeking arbitration must show that the arbitration agreement in question appears in a contract that involves interstate commerce. See, Allied-Bruce Terminix Companies, Inc. v. Dobson, 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995). In the present case, none of the parties disputes that a valid written arbitration agreement exists and that agreement appears in a contract involving interstate commerce. In fact, there could be no argument on that point, because the United States Supreme Court in Allied-Bruce Terminix held that the F.A.A.'s reach coincides with that of the Commerce Clause of the United States Constitution. 513 U.S. at 274-77, 115 S.Ct. at 839-41.
Several federal courts have held, based upon the theory of estoppel, that "[a] signatory was bound to arbitrate with a nonsignatory at the nonsignatory's insistence because of `the close relationship between the entities involved, as well as the relationship of the alleged wrongs to the nonsignatory's obligation and duties in the contract ... and [the fact that] the claims were "intimately founded in and intertwined with the underlying contract obligations."'" Thomson-CSF, S.A. v. American Arbitration Ass'n, 64 F.3d 773, 779 (2d Cir.1995); see also, Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc., 10 F.3d 753, 757 (11th Cir.1993), cert. denied, 513 U.S. 869, 115 S.Ct. 190, 130 L.Ed.2d 123 (1994); McBro Planning & Dev. Co. v. Triangle Elec. Constr. Co., 741 F.2d 342, 344 (11th Cir.1984); J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A., 863 F.2d 315, 320-21 (4th Cir.1988).
It appears clear to me that federal courts have been "[w]illing to estop a signatory from avoiding arbitration with a nonsignatory when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed." Thomson-CSF, S.A., 64 F.3d at 779 (emphasis omitted). In Thomson-CSF, S.A., the Second Circuit Court of Appeals wrote that one does not have to personally sign a contract in order to become subject to its arbitration provision, except as dictated by the laws of contract and agency. 64 F.3d at 776. The court listed the following as traditional bases for binding nonsignatories to an arbitration agreement: "(1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter ego [theories]; and (5) estoppel." Id. at 776. The analysis surrounding each of these bases requires a determination of the closeness of the relationship (i.e., the application of a "close relationship" test) between the signatories and the nonsignatories in regard to the underlying contract obligation, just as is required in a general contract analysis. I would apply those principles to this case because it is clear to me that the plaintiffs' claims in this case are inextricably intertwined with the *892 contract they signed when they bought the mobile home.
Because I firmly believe that the F.A.A., as interpreted by the Supreme Court of the United States and by other federal courts, requires a different result, I must respectfully dissent. See my dissent in Ex parte Jones, 686 So.2d 1166, at 1168-71 (Ala.1996).
HOOPER, C.J., concurs.
NOTES
[1] It is undisputed that the names "George and Barbara P. Martin," as the purchasers, and the date "6-23-95," shown on the face of the document to be the date of the contract, were intended to fill the respective blank spaces in this paragraph.
[2] We note that in upholding the arbitration agreement in Gates, the Court did not consider whether the language of the agreement was impermissibly overbroad; the appellants did not raise that issue, and it has not been considered by this Court in other cases.