738 So.2d 812 (1999)
NISSAN MOTOR ACCEPTANCE CORPORATION
v.
Sarah G. JACKSON.
1980075.
Supreme Court of Alabama.
April 9, 1999.
Rehearing Denied June 11, 1999.
C.C. Torbert, Jr., Peter S. Fruin, and M. Chad Tindol of Maynard, Cooper & Gale, Montgomery, for appellant.
Rufus R. Smith, Jr., and John M. Maddox of Rufus R. Smith, Jr., & Associates, Dothan, for appellee.
HOUSTON, Justice.
Nissan Motor Acceptance Corporation ("NMAC") appeals from the trial court's denial of NMAC's motion to compel arbitration. An appeal is the generally accepted method of review when a trial court denies a motion to compel arbitration. Nissan Motor Acceptance Corp. v. Ross, 703 So.2d 324 (Ala.1997). We affirm.
Sarah G. Jackson sued NMAC; Mitchell Nissan, Inc. ("Mitchell"); and Morris Rivers, a salesperson for Mitchell, who was alleged to be, "at all times relevant to [the events giving rise to the cause of action], doing business as an agent of Defendants [Mitchell] and [NMAC]." Jackson made claims alleging misrepresentation, suppression, and deceit in the sale of a 1993 Nissan Maxima automobile. Jackson did not allege that NMAC was at fault on any basis other than for the acts of its agent Rivers. Mitchell, Rivers, and NMAC moved to compel arbitration, based upon an arbitration clause that appeared in the contract of purchase and sale of the automobile; that contract was signed by the plaintiff and Mitchell, and it identified Rivers as the salesman. The arbitration clause read as follows:

*813 "Buyer acknowledges and agrees that the vehicle purchased herein has traveled in interstate commerce. Buyer thus acknowledges that the vehicle and other aspects of the sales transaction are involved in, or have a direct impact upon, interstate commerce.

"Buyer and Dealer agree that all claims, demand [sic], disputes or controversies of every kind or nature that may arise between them concerning any of the negotiations leading to the sale of the vehicle, terms and provisions of the sale, the performance or condition of the vehicle, or any other aspects of the vehicle and its sale shall be settled by binding arbitration conducted pursuant to the provision of 9 U.S.C. Section 1 et seq. an[d] according to the Commercial Rules of the American Arbitration Association. Without limiting the generality of the foregoing, it is the intention of the Buyer and the Dealer to resolve by binding arbitration all disputes between them concerning the vehicle, its sale and its condition, including disputes concerning the terms and conditions of the sale, the condition of the vehicle, any damage to the vehicle, the terms and meaning of any of the documents signed or given in connection with the sale, any representations, promises or omissions made in connection with negotiations for the sale of the vehicle, or any terms, conditions, or representation made in connection with the financing, credit life insurance, disability insurance and vehicle service contract purchased or obtained in connection with the vehicle.
"Either party may demand arbitration by filing with the American Arbitration Association a written demand for arbitration along with a statement of the matter in controversy. A copy of the demand for arbitration shall simultaneously be served upon the other party. The Buyer and the Dealer agree that the arbitration proceedings to resolve all such disputes shall be conducted in the city where Dealer's facility is located."
(Emphasis added.)
The term "dealer" is not defined in the contract of purchase and sale; however, the contract does provide that "[i]f the vehicle is financed the dealer may be paid by the assignee of the contract assignment fee [sic]." (Emphasis added.) This wording indicates that the term "dealer" does not include an assignee. NMAC was not mentioned in this contract and did not sign it.
Mitchell and the plaintiff also executed a document styled "Simple Interest Retail Installment ContractAlabama." That document did not contain an arbitration clause, but did contain the following: "NOTICE: The Seller intends to sell this contract to [NMAC], which, if it buys the contract, will become the owner of the contract and your creditor. After the sale of this contract, all payments and questions concerning terms of the contract should be directed to NMAC." ... "If we [Mitchell] transfer this contract to an assignee, you agree that the assignee will have all of our rights and remedies under the contract...."
The alleged misrepresentation, suppression, and deceit for which NMAC has been sued do not involve the execution, or the contents, of the document styled "Simple Interest Retail Installment ContractAlabama."
The trial court granted the motion of Mitchell and Rivers to compel arbitration of the claims against them, but denied the "Motion to Dismiss/Compel Arbitration" as to NMAC.
NMAC first contends that the trial court erred in denying its motion. In denying NMAC's motion, the trial court relied upon Nissan Motor Acceptance Corp. v. Ross, supra, in which this Court reversed a trial court's denial of NMAC's motion to compel arbitration. In that case, Ross purchased an automobile from Jim Burke Automotive, Inc. That sale, like *814 this one, involved two pertinent documents: a buyer's order, which contained an arbitration clause and which was signed by Ross and Jim Burke (but not NMAC); and a retail sales contract, which was assigned to NMAC. In Ross, the buyer's order specifically incorporated the retail sales contract. In the present case, the buyer's order did not specifically incorporate the retail sales contract. The retail sales contract in Ross, like the retail sales contract in the present case, provided "that the assignee will have all of our rights and remedies under the contract." In Ross, clearly the arbitration agreement had been integrated into the retail sales contract, and that fact distinguishes Ross from this present case.
NMAC relies on the wording of a special concurrence in Ross to make the Ross holding broader than it is. That special concurrence includes the following statement:
"The distinction between this case and [Ex parte] Martin, [703 So.2d 883 (Ala. 1996),] and [Ex parte] Jones, [686 So.2d 1166 (Ala.1996),] represents a significant difference. Nissan [NMAC] became an assignee of the Jim Burke contract; therefore, it can assert the terms of that contract, including the arbitration clause."
(Emphasis added.) 703 So.2d at 327 (Cook, J., concurring).
The statement emphasized here from Justice Cook's special concurrence in Ross applies to the facts in that case. In that case, NMAC became an assignee of a contract into which an arbitration clause was integrated; therefore, it could assert the arbitration clause. In this present case, NMAC did not become an assignee of a retail sales contract into which the buyer's orderwith its arbitration clausewas integrated; therefore, even the rationale of the special concurrence in Ross would not require that we reverse the trial court's order in this present case.
However, in this present case the plaintiff is suing NMAC only under a theory of respondeat superior, i.e., she is asserting that Rivers was acting as an agent of NMAC when he made the alleged misrepresentations and concealments. NMAC's liability is predicated solely on Rivers's liability. If Rivers is found not to be at fault, then NMAC cannot be at fault. United Steelworkers of America v. O'Neal, 437 So.2d 101 (Ala.1983); Larry Terry Contractors, Inc. v. Bogle, 404 So.2d 613 (Ala.1981). On May 13, 1997, the trial court ordered "[t]hat in resolution of her disputed claim[s] against Defendant[] ... Morris Rivers, the Plaintiff is compelled to participate in arbitration with said Defendant[] as provided by the terms of the executed arbitration agreement." From all that appears in the record and the briefs filed in this case, the plaintiff did not challenge the trial court's order by petitioning for a writ of mandamus. Therefore, the question of NMAC's liability may be decided by arbitrators, because if the arbitrators find in favor of Rivers, then a judgment entered on the arbitrators' order will be conclusive as to the question of NMAC's liability. However, because the arbitration provision is not broad enough to encompass the claims made against NMAC, NMAC is not entitled to compel arbitration. See Universal Underwriters Life Ins. Co. v. Dutton, 736 So.2d 564 (Ala.1999).
AFFIRMED.
HOOPER, C. J., and COOK, SEE, LYONS, and BROWN, JJ., concur.
JOHNSTONE, J., concurs specially.
KENNEDY, J., concurs in the result.
MADDOX, J., dissents.
JOHNSTONE, Justice (concurring specially).
While I concur in the holding, I do not join in the obiter dictum to the effect that an arbitrator's exoneration of the agent, reduced to judgment, if the arbitrator so rule, will exonerate the non-arbitrating *815 principal. If we are going to issue such obiter dictum, why should we not include also that an arbitrator's finding the agent liable, reduced to judgment, will bind the non-arbitrating principal if the agency is not in dispute and the principal is in privity with the agent? Likewise, why should we not include that, if the plaintiff prevails against the principal on the theory of respondeat superior in a court trial before the arbitration occurs, then the agent will be bound in the arbitration by the already adjudicated finding that the agent committed the tort against the plaintiff, if the arbitrator finds the agent in privity with the principal?
In fact, these cases where either the principal or agent goes to arbitration and the other goes to trial will present a number of combinations and permutations depending on the parties to the respective proceedings, the sequence of the proceedings (trial first or arbitration first), and the result of the first proceeding. At a minimum, the principal or the agent will win or lose in a trial or an arbitration before the succeeding arbitration or trial. Sometimes the principal or agent will lose only to some limited extent (like $100), which the other will want to invoke against the plaintiff.
In most cases where agency is undisputed and the plaintiff's claim against the principal is limited to the theory of respondeat superior, the principal and the agent will be in privity. The issues will be the same, the interests will be the same, the legal representation for each will be the same (or allied hand in glove), and the opposing party will be the same.
Before we begin deciding against whom collateral estoppel or res judicata will operate and against whom not, we should consider all the ramifications and decide whether either should operate between these two radically different types of judgments. Many defendants have lost faith in the court trial system, and many plaintiffs have lost faith (or never acquired it) in the arbitration system. Before we embark on any of these decisions, we should await cases which present these issues, and briefs and arguments which elucidate them. Our prejudging these collateral estoppel and res judicata issues by way of obiter dictum is a mistake.