HARWOOD, Justice.
The Water and Wastewater Board of the City of Madison and Bernard L. Bressette (hereinafter collectively referred to as “the Water Board”) appeal from the trial court’s writ of mandamus directing the Water Board to provide water service to property owned by G. Walton Anderson. We reverse and remand.
On April 24, 2001, Anderson sued the Water Board; his complaint contained, as an alternative, a petition for a writ of mandamus that sought an order from the trial court directing the Water Board to provide water service to his property.[1] Anderson’s complaint stated, in pertinent part:
“2. Plaintiff is the owner of a tract or parcel of land located in Madison County, Alabama (hereinafter ‘the Property’). The Property contains approximately 8.85 acres more or less, and is bounded on the west by County Line Road, a public road being on the approximate boundary between the counties of Madison and Limestone, Alabama. The Property is bounded on the north, east, south, and west by the corporate boundaries of the City of Madison, Alabama, a municipal corporation organized and existing under the laws of the State of Alabama (‘the City’). The Property is more specifically described by ‘Exhibit A,’ attached hereto and made a part of this complaint. [Exhibit A is not attached to this opinion.]
“3. Defendant, the Water and Wastewater Board of the City of Madison, Inc., is a public corporation within the state of Alabama, organized pursuant to Sections 11-50-310 through 11-50 — 324[,] Code of Alabama, 1975 (hereinafter ‘the Defendant’). The Defendant owns and operates a water system as a public utility, and is the sole distributor of potable water within the corporate boundaries of the City of Madison, and certain nearby territory. Defendant, Bernard L. Bressette is the duly appointed and acting General Manager of the Defendant, with authority and supervision over the issuance of connection permits for customers seeking service. (Hereinafter ‘Bressette’.)
“4. On or about the 27th day of July 1990, the Defendant entered into an agreement with the Madison County *1232 Commission, the governing body of Madison County, Alabama, to purchase from the County certain assets then owned and operated by the County as part of its water system serving portions of Madison County (‘the 1990 Acquisition’). The Property was at that time a part of the then service area acquired by the Defendant through the 1990 Acquisition, although there was at the time no actual water distribution line directly adjacent to or upon Plaintiffs property.
“5. Shortly after the 1990 Acquisition, and before Plaintiff actually requested water service to the Property, the Defendant installed a ductile iron water distribution line in the right-of-way of County Line Road, directly adjacent to Plaintiffs Property (‘the Adjacent Line’).
“6. Subsequent to installation of the Adjacent Line, Plaintiff initiated oral discussions with Bressette, concerning potable water service to the Property. Mr. Bressette stated that water was available to the property upon payment of the Board’s standard tap fee, but that sanitary sewage service would not be available. No actual application for service was made at that time due to unavailability of sanitary sewer.
“7. On the 8th day of January 1996, and in spite of the responsibility for service assumed by the Defendant under the terms of the 1990 Acquisition Agreement with respect to the service area, the Defendant adopted a policy denying service to any property not included within the corporate boundaries of the City of Madison (hereinafter ‘the 1996 Policy’).
“8. Plaintiff has applied for and received permits from the Madison County Department of Health permitting installation and maintenance of a sanitary sewer septic system serving the Property-
“9. After having been denied service by Defendant, Plaintiff arranged, with the approval of the Madison County Commission, to receive service to the Property from the Limestone County Water Authority, which then served an area of Limestone County located across County Line Road from Plaintiff[’]s Property. On April 23, 1998, employees of Defendant, acting under instructions from Bressette, and as an aid to enforcement of the 1996 Policy, wrongfully and unlawfully removed and/or appropriated a casing and PVC pipe which Plaintiff had installed under County Line Road at a cost of $8,300.00. The sole purpose of the confiscation was to compel Plaintiff to annex his property into the City of Madison and to compel Plaintiff to utilize as a customer, Defendant’s water and sewer service.
“10. On or about July 1, 1999, Plaintiff, through his attorney, applied to the Defendant for water service to the Property. The application demonstrated compliance with all of the rules, regulations, and requirements of Defendant with respect to operation of its public water system, except that the Property remained outside the corporate boundaries of the City.
“11. On or about July 29, 1999, Plaintiffs counsel received a response to Plaintiffs request for service from Defendant’s attorney, Honorable William W. Sanderson, Jr., citing the 1996 Policy. It was claimed by Defendant’s attorney that the 1996 Policy was ‘... firmly grounded in important public policy considerations related to assuring that safe and healthful drinking water can be made available to the (Defendant’s) customers.’ It was also claimed that the 1996 Policy was a ‘legitimate exercise of the (Defendant’s) authority *1233 and responsibility to protect the sources of water for its Customers.’ In effect, Defendant, through its attorney, claims the right to deny service to a portion of its service area as a public utility, solely on the ground that the property to be served is not within the corporate boundaries of the City. The Defendant is a public corporation which enjoys only those powers conferred by its charter. The charter of Defendant confers no powers on the corporation, either express or implied, to regulate the use of any property within its service areas as a means of compelling its customers to also utilize its sanitary sewer service, or as a means to compel its customers to annex into the corporate boundaries of any municipality. The Defendant has no corporate charter power over any municipal annexation policy. The 1996 policy is ultra vires and void as being in excess of the charter power of the Defendant as a public utility.
“12. As a public utility, Defendant enjoys a franchise to operate a water distribution system serving customers within the corporate boundaries of the City of Madison, or partly within and partly without such boundaries. Defendant also has a public duty to serve all customers who apply for service and who comply with its reasonable rules, regulations, and conditions. Plaintiffs Property is located within the service area of Defendant. Plaintiff has complied with all of the reasonable rules, regulations, and conditions adopted by Defendant which are within its charter power. Nevertheless, Defendant has arbitrarily and without just cause, failed and refused to perform its obligation of service to Plaintiff and Plaintiffs Property.
[[Image here]]
“14. Defendant, as a public corporation, is invested by the State of Alabama with the powers of eminent domain (Alabama Code Section 11 — 50—314(a)(ll)). As a public corporation invested with the power of eminent domain, Defendant is commanded by the Constitution of Alabama of 1901, Section 235, to make just compensation before taking, injury, or destruction of property for public use. The application of Defendant’s 1996 Policy has caused great injury and damage to Plaintiffs Property, and has resulted in Plaintiff being hindered in planning for the commercial use of his Property, for which it is well located and suited, and has prevented him from developing, using, or leasing said Property for any purpose for which it is suited, thereby totally depriving Plaintiff of the value of its use during the time that the 1996 Policy has been applied to prevent such use.
“15. As a result of Defendant’s enforcement of the 1996 Policy, Plaintiff has been forced to spend great sums of money to find alternative ways to develop his Property and to serve the users thereof with potable water for operation of commercial businesses, including the operation of a proposed convenience store to be located on part of the property. Plaintiff has been forced to drill his own well at great expense, and although the well is proven to produce great amounts of water far in excess of the needs of Plaintiffs Property, the estimated cost of installing a treatment and distribution system to support commercial use of Plaintiffs Property is $66,900.00. Even though Plaintiff has received all of the necessary permits to install said system, Plaintiff prefers service from defendant’s system, thereby avoiding future operation and maintenance expense for operation of his own system.”
*1234 On April 26, 2001, the trial court set a show cause hearing on Anderson’s petition for the writ of mandamus for July 6, 2001. On June 18, 2001, the Water Board filed a motion to dismiss Anderson’s claims against it, arguing, in part, that “[t]here is neither an Alabama statutory requirement for a municipal water board to provide water to a designated service area nor is there any Alabama jurisprudence which would impose such a requirement.” The trial court noted on the face of the motion that it would also hear the motion to dismiss on July 6, 2001, and that any written response had to be filed by July 8, 2001.
On July 3, 2001, Anderson filed eviden-tiary submissions and a brief and argument in opposition to the Water Board’s motion to dismiss; Anderson’s filing also contained a motion to convert the Water Board’s motion to dismiss into a motion for a summary judgment. The trial court held a hearing on July 6, and on July 9, 2001, the Water Board filed a brief in support of its motion to dismiss and response to the show cause hearing with attached exhibits. On July 27, 2001, Anderson filed caselaw in support of his petition for the writ of mandamus and an evidentiary supplement to his July 3, 2001, opposition to the Water Board’s motion to dismiss. On that same day, the Water Board filed an amended motion to dismiss. On October 11, 2001, Anderson filed a second evidentiary supplement in opposition to the Water Board’s motion to dismiss and a supplemental brief in support of his petition for the writ of mandamus.
On October 17, 2001, the Water Board filed a supplemental response to Anderson’s July 27, 2001, and October 11, 2001, filings. On October 26, 2001, the trial court entered an order; that order stated, in pertinent part:
“THIS matter initially came before the Court for hearing on July 6, 2001, which hearing addressed the request of the Plaintiff for a show cause/mandamus hearing by the Defendants, but which also included arguments and submissions from the Defendants concerning their Motion to Dismiss .... The parties appeared at that time with their respective counsel and the Court proceeded to receive arguments, exhibits and additional submissions. By mutual agreement of counsel, these additional submittals were made of pleadings and documents for the Court’s consideration containing materials that were outside the initial pleadings .... The parties agreed that the Court should treat the Defendants’ motion to dismiss as a motion for summary judgment in accordance with Rule 56 of the Alabama Rules of Civil Procedure. Since then, the Court has continued to receive various pleadings and supplements and, having considered same, ORDERS as follows:
[[Image here]]
“2. As to Count I which seeks an order requiring the [Water and Waste-water Board of the City of Madison] and Bernard L. Bressette, General Manager of the [Water and Wastewater Board of the City of Madison] to provide water service to property of the Plaintiff, G. Walton Anderson, the Court is of the opinion that the Plaintiff is entitled to water service to his property as described in the complaint, that the Defendants may not deny service because the property is not annexed into the City of Madison or because the property will be served by otherwise lawful septic tank.
“Therefore, it is hereby ORDERED that the Plaintiffs prayer for an order mandating service is hereby granted and the Defendants are ORDERED to forthwith provide water service to the Plaintiffs property....”
*1235 (Emphasis omitted.) On November 26, 2001, the Water Board filed a motion to alter, amend, or vacate the trial court’s order; that motion was denied on December 20, 2001. On January 29, 2002, the Water Board filed a notice of appeal to this Court.
The Water Board, in its brief on appeal, frames the issue, with sub-issues, as follows:
‘WHETHER THE TRIAL COURT ERRED IN ISSUING A WRIT OF MANDAMUS REQUIRING THE WATER BOARD TO PROVIDE WATER SERVICE TO ANDERSON’S PROPERTY.
“A. Whether mandamus relief is unavailable in this case because Anderson does not have a clear right to the relief sought, because the decision whether to supply water to his property is discretionary with the Water Board, and because other adequate remedies are available.
“B. Whether the Water Board may refuse to supply water to Anderson’s property, which is located outside the City of Madison but contiguous to the city limits, unless Anderson’s property is annexed into the City.”
The Water Board first argues that the trial court erred in granting Anderson’s petition for a writ of mandamus because, it says, Anderson did not prove the necessary elements required for mandamus relief. This Court has stated:
“A writ of mandamus is an extraordinary remedy, and it will be ‘issued only when there is: 1) a clear legal right in the petitioner to the order sought; 2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; 3) the lack of another adequate remedy; and 4) properly invoked jurisdiction of the court.’ Ex parte United Serv. Stations, Inc., 628 So.2d 501, 503 (Ala.1993). A writ of mandamus will issue only in situations where other relief is unavailable or is inadequate, and it cannot be used as a substitute for appeal. Ex parte Drill Parts & Serv. Co., 590 So.2d 252 (Ala.1991).”
Ex parte Empire Fire & Marine Ins. Co., 720 So.2d 893, 894 (Ala.1998).
It is undisputed that the service area the Water Board purchased in 1990 from the Madison County Commission included Anderson’s property. However, on January 8, 1996, the Water Board adopted a resolution that limited its service area. That resolution stated, in pertinent part:

“A RESOLUTION TO ADOPT A WATER SERVICE AREA POLICY

“WHEREAS, the Water and Waste-water Board was organized and incorporated by the City of Madison, Aabama; and
‘WHEREAS, in recent years the explosive growth of the City of Madison has put heavy demands on the resources of the Board to meet the water and sewage disposal needs of Madison residents and businesses; and
WHEREAS, these demands on the Board’s resources, particularly the demand for water, has made it increasingly difficult for the Board to meet the needs of the City of Madison customers while continuing with the Board’s policy of serving water customers outside Madison’s city limits; and
“WHEREAS, while the Board is presently engaged in an extensive search for new water sources, the success of the effort is far from certain and, in any event, the costs of securing significant *1236 new water sources will be substantial; and
“WHEREAS, the Board finds and declares its primary purpose to be the provision of water and sewage disposal services to customers located within the corporate limits of the City of Madison.
“NOW, THEREFORE, BE IT RESOLVED BY THE WATER AND WASTEWATER BOARD OF THE CITY OF MADISON, ALABAMA, that the attached Water Service Area Policy of the Board is hereby adopted, effective immediately upon the adoption of this policy.
“The General Manager is directed to publish this policy for three consecutive weeks in a newspaper of general circulation in the City of Madison.”
The Water Service Area Policy adopted by the Water Board stated, in pertinent part:

“INTRODUCTION

“By the policy adopted today, the Water and Wastewater Board of the City of Madison reverses its previous policy of making water service available to applicants for such service within reach of the Board’s water mains. This policy is the outgrowth of increasing demands for the Board’s limited resources and a review of the Board’s historical core commitment to supply residents and businesses of the City of Madison.

“HISTORICAL BACKGROUND FOR THIS POLICY

“The Water and Wastewater Board of the City of Madison was organized and incorporated by the City of Madison primarily for the purpose of providing water and sewage disposal services to the residents and businesses of the City of Madison. While there have been some examples of the Board providing public sewer service to customers outside of Madison’s city limits, that practice, except for service to then-existing customers, was prohibited several years ago by ordinance. The City’s action to limit sewer service outside the city limits coincided with a commitment by the City to invest substantially in improvement and extension of the Board’s sanitary sewer system. This effort, which included construction of the Board’s western sewer outfall line, was undertaken, in large measure, to encourage future annexations of the area to be served by the improvements to the system.
“During the time since the City financed the construction of the Board’s western sewer outfall line, significant additional developments have occurred in the area. While the Board’s sewer outfall line, with the construction of connecting trunks, has been adequate to handle this new and expected growth, the Board’s existing water resources have been severely tested and will clearly be inadequate for continued growth at rates seen in the last decade.
“One reason the Board’s water resources have been so severely tested is that the area on the fringes but outside of the corporate limits of the City of Madison has presented ever-increasing demands for water service from the Board. These demands make it more difficult to ensure an adequate supply of water to customers and potential customers inside the City’s corporate limits.
“In addition, because of the unavailability of the Board’s sewer system outside of Madison’s city limits, development outside the City is always designed to use septic tanks. This is problematical because most, if not all, of the recently proposed development is located within the recharge area of the wells *1237 which supply the water produced by the Board for its customers.
“Since the Board relies exclusively on ground-water for the water it produces to sell to its customers, substantial development on the fringes, but outside of Madison’s city limits, poses a double threat to the Board’s mission to serve Madison residents with clean, reliable water and sewage disposal services. First, water service needs of outside-City developments make increasing demands on the available water resources of the Board. Second, the proliferation of septic tanks within the recharge area of existing and prospective wells threatens the Board’s ability to protect and expand water resources necessary to serve the Board’s core customers, the residents and businesses of the City of Madison.
“Quite often, property outside the City for which water service is requested is contiguous to the city limits and annexation is a realistic possibility. In most such cases, the Board’s sanitary sewer system is available, or could be made available at reasonable costs after annexation into the city limits.
“Limitation of new water service to the corporate limits of the City of Madison promotes the public interest in a number of ways. First, it promotes more efficient utilization of existing sewer infrastructure. Second, it has the effect of avoiding the proliferation of septic tanks which may pollute the Board’s water sources. Finally, it enables the Board to concentrate its resources for the customers it was incorporated to serve.
“All of these important issues of public policy demand a review and revision of the Board’s past policy regarding water services outside the City. The Board is fully cognizant of the fact that in a number of situations, the Board’s prior commitment to serve water to subdivisions outside the City has resulted in isolated undeveloped residential lots, not contiguous to the city limits, which can be served by the Board, but which cannot be reasonably served in any other way. It would seem unreasonable for the adoption of this policy to adversely affect those lots and property owners.
“Likewise, there may be property not contiguous to the City which is contiguous to water mains of the Board where service to a single residential lot will not unreasonably impact the Board’s water resources nor unreasonably threaten the water quality of its wells. It is not the intent of this policy to adversely impact such property.
“It is the intent of this policy, however, to enhance the Board’s ability to ensure that it can meet its commitment to provide its core customers, the residents and businesses of the City of Madison, with clean, safe, plentiful, and reliable water service as well as appropriate sewage disposal service. The Board finds that this can best be accomplished by limiting the Board’s service of water to the city limits of the City of Madison, as those limits may hereafter be expanded, except insofar as the Board has made previous commitments to serve platted and approved subdivisions or existing individual customers outside the City or the exceptions mentioned above as to new connections.

“POLICY STATEMENT

“1. Effective immediately, the Water and Wastewater Board of the City of Madison will not approve new water service to any applicant for such service for a location outside the city limits of the City of Madison except under the following circumstances:
*1238 “(a) The water service requested is for property presently served by the Board and is for service of a like or similar nature to the now-existing service.
“(b) Another water utility company requests the Board’s cooperation to serve a property outside the City of Madison and the Board determines that the request will not unreasonably impact the Board’s available water resources nor unreasonably threaten the water quality of its wells.
“(c) The request is for a single residential (not multifamily) service in a platted and recorded subdivision in Madison County in which the Board currently serves other residential customers and the property is not contiguous and cannot reasonably be made contiguous to the city limits of the City of Madison; or
“(d) The request is for a single residential (not multifamily) service for property which is contiguous to an existing water main of the Board (and may be served by the main without the necessity of easements or rights-of-way from any third party), but which is not contiguous and cannot reasonably be made contiguous to the city limits of the City of Madison; or
“(e) The request for water service is for property which is the subject of a pending petition for annexation submitted to the City of Madison and the approval for water service is made contingent upon the successful annexation of the property into the City.
“2. Notwithstanding the exceptions stated above, if any request for water service outside the city limits is for a service which proposes to also use a septic tank for sewage disposal services, the Board reserves the right to deny the water service if the property is within a one thousand (l,000)-foot radius of any existing well operated by the Board or any proposed well which the Board has under development.
“3. For purposes of this policy, property will be deemed contiguous to the city limits of the City of Madison if any adjacent property owned or controlled by the applicant for water service (or members of the applicant’s immediate family) is contiguous to the City, or if the City of Madison would consider the property contiguous for purposes of considering an application for annexation of the property.”
It is undisputed that Anderson did not file a formal application for water service with the Water Board until July 1, 1999.
Anderson correctly argued to the trial court, and now argues to this Court, that “[a] public utility is obligated to serve all members of the public that it holds itself out to serve, fairly and without discrimination.” Miller v. Hillview Water Works Project, Inc., 273 Ala. 267, 271, 139 So.2d 337, 339 (1962). However, after the Water Board limited its service area in 1996, it no longer held itself out to serve potential customers outside the Madison city limits except under certain specified circumstances. As stated previously, Anderson did not file a formal application for service until 1999. Further, as this Court stated in Miller, “[t]here are ... conditions precedent to the obligation of a public utility to serve any particular applicant. The applicant must submit to such reasonable conditions as the utility sees fit to impose.” 273 Ala. at 271, 139 So.2d at 340. The Water Board’s adoption of a new service area is also entitled to a presumption of validity, Water Works Board of Birmingham v. Barnes, 448 So.2d 296 (Ala.1983)(water board’s creation of a rate schedule was a legislative act and should have been presumed valid by the trial *1239 court); Marshall Durbin & Co. v. Jasper Utils. Bd., 437 So.2d 1014, 1018 (Ala.1983)(“Thus, the actions of the [Jasper Utilities] Board, when it acts in its legislative capacity to promulgate rates, as when it takes other legislative actions, are attended with a presumption of validity.”), overruled on other grounds, Ex parte Waterjet Systems, Inc., 758 So.2d 505 (Ala.1999). The Water Board’s submissions concerning the policies underlying the annexation requirement show a reasonable rationale for the requirement — protecting the purity of its sources for groundwater. Moreover, Anderson has failed to show that the Water Board’s policy of requiring annexation of property contiguous to Madison’s city limits had been applied in an arbitrary or discriminatory manner with regard to him as compared with any other person or entity. Miller, supra. Accordingly, we conclude that Anderson did not have a clear legal right to have the Water Board provide water service to his property-
We are also persuaded that mandamus relief is inappropriate by the Water Board’s argument that Anderson had at least one other remedy available to him — a declaratory-judgment action. Anderson does not deny that such an action was available. This Court has stated:
“The lack of another adequate remedy is a prerequisite to the issuance of a writ of mandamus. Ex parte Martin, 703 So.2d 883, 884 (Ala.1996). Bush does not deny that a declaratory-judgment proceeding constitutes an available adequate remedy, but argues that had he sought a declaratory judgment and won, the likelihood is that the same issues presented by this mandamus petition would have been presented to this Court in an appeal by the losing party. Had the scenario presented by Bush occurred, this Court might have found itself faced with the same legal question; however, a critical difference would have existed: there would have been before this Court a fully developed record from a declaratory-judgment proceeding.”
Ex parte Galanos, 796 So.2d 390, 392-93 (Ala.2000).
For the foregoing reasons, we conclude that the trial court erred in issuing a writ of mandamus to the Water Board. Therefore, we reverse the judgment of the trial court and remand this cause for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
MOORE, C.J., and HOUSTON, BROWN, JOHNSTONE, WOODALL, and STUART, JJ., concur.
SEE and LYONS, JJ., concur in the result.

. Anderson’s complaint and a subsequently filed amended complaint asserted additional claims against the Water Board that are not pertinent to this appeal.