736 So.2d 564 (1999)
UNIVERSAL UNDERWRITERS LIFE INSURANCE COMPANY
v.
Jennifer D. DUTTON and John A. Dutton.
General Motors Corporation
v.
Jennifer D. Dutton and John A. Dutton.
Premier Finance Company of Birmingham, Inc.
v.
Jennifer D. Dutton and John A. Dutton.
Ex parte Edwards Chevrolet Company, Inc.
Re Jennifer D. Dutton and John A. Dutton
v.
Edwards Chevrolet Company, Inc., et al.
Nos. 1971279, 1971286, 1971693 and 1971316.
Supreme Court of Alabama.
March 19, 1999.
Rehearings Denied May 21, 1999.
*566 Samuel H. Franklin and Wynn M. Shuford of Lightfoot, Franklin & White, L.L.C., Birmingham, for Universal Underwriters Life Insurance Company.
Lee M. Pope of Johnston, Barton, Proctor & Powell, L.L.P., Birmingham, for General Motors Corporation.
Roger L. Bates, Edwin O. Rogers, and Jeffrey D. Dyess of Hand Arendall, L.L.C., Birmingham, for Premier Finance Company, Inc.
Jack E. Held and Wilson F. Green of Sirote & Permutt, P.C., Birmingham, for Edwards Chevrolet Company, Inc.
Jeffrey C. Kirby of Pittman, Hooks, Dutton & Hollis, P.C., Birmingham, Charles E. Robinson, Jr., Ashville; Alexander M. Weisskopf, Birmingham, for Jennifer D. Dutton and John A. Dutton.
Jeffrey C. Kirby of Pittman, Hooks, Dutton & Hollis, P.C., Birmingham, for Judge Robert E. Austin.
Matthew C. McDonald and Thomas J. Woodford of Miller, Hamilton, Snider & Odom, L.L.C., Mobile, for amicus curiae Alabama Civil Justice Reform Committee.
HOUSTON, Justice.
John A. Dutton and his wife, Jennifer D. Dutton, sued Edwards Chevrolet Company, Inc. ("Edwards"); Steve Plummer, a salesman at Edwards; Premier Finance Company of Birmingham, Inc. ("Premier"); General Motors Corporation ("GM"); and Universal Underwriters Life Insurance Company ("Universal"), seeking damages based on allegations of negligence, wantonness, fraud, conspiracy to defraud, and breach of fiduciary duties, in connection with the Duttons' purchase of a new automobile from Edwards. The complaint is based primarily on allegations that Plummer falsely represented to the Duttons that, as a condition to purchasing the automobile and receiving financing from Premier, they had to purchase credit-life and credit-disability insurance from Universal and an extended-service contract from GM. The Duttons also allege that Premier, GM, and Universal are liable for Plummer's representations, under the doctrine of respondeat superior.
All of the defendants moved to compel arbitration of the Duttons' claims, based on two arbitration provisions contained in the sales documents. The "Buyer's Order," signed by the Duttons and the sales manager at Edwards, contains the following "Alternative Dispute Resolution Agreement":
"Any dispute, controversy or claim arising out of or relating to this agreement, or the breach thereof, or arising out of any prior dealings between seller and buyer or arising out of any future dealings between seller and buyer, shall be settled by arbitration in the State of Alabama in accordance with the Commercial Arbitration Rules of the American Arbitration Association (the `Arbitration Rules of the AAA'), and judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.
"The parties anticipate that the funding pursuant to this agreement, as well as the vehicle which is the subject of this agreement, will come from sources outside the State of Alabama. Therefore, seller and buyer acknowledge and agree that this agreement involves `commerce' as defined in the United States Arbitration Act, Title 9, United States Code, `Arbitration,' hereinafter referred to as the `USAA.'
"The parties intend that this agreement shall encompass and embody the broadest range of matters that may be arbitrated under federal law. The parties further agree that any question as to the scope of this agreement shall, to the extent permitted by law, be determined *567 by the arbitrator (including, without limitation, issues of unfairness, capacity, waiver, unconscionability and so forth). The parties further agree that should one party invoke arbitration in accordance with this agreement, the other party shall bring to the arbitration process any claim or counterclaim which it may have against the invoking party, whether deemed to be compulsory or permissive in law; and, the failure to bring such claim or counterclaim shall constitute a waiver of and a bar to the bringing of such claim or counterclaim in any subsequent arbitration or legal action.
"Seller and buyer understand and agree (I) that each of them is waiving rights to seek remedies in court, including the right to a jury trial; (II) that pre-arbitration discovery in arbitration proceedings is generally more limited than and different from court proceedings; (III) the arbitrators' award is not required to include factual findings or legal reasonings; and (IV) either party's right to appeal or to seek modification of rulings by the arbitrators is strictly limited. The venue for arbitration shall be in the county of the buyer's residence."
(Emphasis in original.)
The "Retail Installment Contract and Security Agreement," executed by the Duttons contemporaneously with the "Buyer's Order," contains the following provision:
"Customer, dealer and assignee of dealer, agree that all claims, demands, disputes, or controversies of every kind or nature that may arise between or among them arising out of or concerning the sale and financing of the motor vehicle, the condition of the vehicle, the terms of financing, the sale of credit insurance, service contracts and other services or products, shall be settled by binding arbitration conducted pursuant to the provisions of 9 U.S.C. § 1, et seq., and according to the commercial rules of the American Arbitration Association then prevailing in the county and state where this transaction was entered into. Without limiting the generality of the foregoing, it is the intention of the customer, dealer and dealer's assignees, to resolve, by binding arbitration, all disputes between or among them concerning all direct and indirect aspects of the sale and credit terms, the sale and financing of the motor vehicle, the condition of the vehicle, the terms of financing, the sale of credit insurance, service contracts and other services or products, any representations, promises or omissions made in connection with negotiations for the sale and financing and any terms, conditions, or representations made in connection with the sale and financing matters of credit life insurance, disability insurance, service contracts or agreements, or otherwise arising out of or resulting from the business transactions entered into on the day and date hereof, in tort, contract, by statute or otherwise."
The "Retail Installment Contract and Security Agreement" specifically incorporates the terms and provisions in the "Buyer's Order":
"You [the Duttons] agree that this and any other written agreement pertaining to this sale contain all of the terms and provisions of your agreement with us [Edwards]."
Edwards assigned the "Retail Installment Contract and Security Agreement" to Premier. The validity of that assignment is not in issue.
The trial court granted Edwards and Plummer's motion to compel arbitration; however, it ordered Edwards to initiate arbitration and to pay all of the fees and expenses associated with the arbitration process. The trial court denied the other defendants' motions. Premier, GM, and Universal appeal from the trial court's order denying their motions to compel arbitration. Edwards petitions for a writ of mandamus directing the trial court to vacate *568 its order requiring it to initiate arbitration and to bear all of the costs of arbitration. The Duttons did not seek mandamus review of the trial court's order granting Edwards and Plummer's motion to compel.[1]

I. GM and Universal
After carefully reviewing the record and the briefs, we conclude that the trial court properly denied arbitration of the Duttons' claims against GM and Universal. The "Retail Installment Contract and Security Agreement" incorporates the provisions of the "Buyer's Order," including that document's arbitration provision. Therefore, the arbitration provisions contained in those documents must be read together to determine whether the Duttons agreed to arbitrate with nonsignatories.[2]
The arbitration agreement contained in the "Buyer's Order" states in part that "[a]ny dispute, controversy or claim arising out of or relating to this agreement, or the breach thereof, or arising out of any prior dealings between seller and buyer or arising out of any future dealings between seller and buyer, shall be settled by arbitration." Standing alone, the reference to "[a]ny dispute, controversy or claim arising out of or relating to this agreement" could logically be read independently of the later references to "seller" and "buyer"; read alone, that reference could suggest an agreement on the part of the Duttons to arbitrate disputes with nonsignatories, such as GM and Universal, provided that the "dispute, controversy or claim" arose out of or related to the agreement. However, we think that reading the more specific arbitration provision contained in the "Retail Installment Contract and Security Agreement" in conjunction with the more generic provision contained in the "Buyer's Order" makes the parties' intent clear:
"[I]t is the intention of the customer [the Duttons], dealer [Edwards] and dealer's assignees [Premier], to resolve, by binding arbitration, all disputes between or among them concerning all direct and indirect aspects of the sale and credit terms, the sale and financing of the motor vehicle, the condition of the vehicle, the terms of financing, the sale of credit insurance, service contracts and other services or products, any representations, promises or omissions made in connection with negotiations for the sale and financing and any terms, conditions, or representations made in connection with the sale and financing matters of credit life insurance, disability insurance, service contracts or agreements, or otherwise arising out of or resulting from the business transactions entered into on the day and date hereof, in tort, contract, by statute or otherwise."
(Emphasis added.) When we consider both of the arbitration provisions agreed to by the Duttons, we cannot hold that they agreed to arbitrate disputes with nonsignatories. See Ex parte Isbell, 708 So.2d 571 (Ala.1997), wherein this Court read two provisions in the same agreement in pari materia for the purpose of determining whether nonsignatories were within the *569 scope of the agreement. Therefore, we do not address GM and Universal's argument that the Duttons should be equitably estopped from denying an obligation to arbitrate their claims. See First Family Financial Services, Inc. v. Rogers, 736 So.2d 553 (Ala.1999), and the cases cited therein.
The order is affirmed to the extent it denied arbitration of the claims against GM and Universal.

II. Premier
The trial court denied Premier's motion to compel arbitration, without stating its reasons. The basis for the trial court's ruling is unclear, given the fact that it granted Edwards and Plummer's motion to compel arbitration. The Federal Arbitration Act, 9 U.S.C. § 1 et seq., clearly applies to this transaction, which no one disputes involves interstate commerce.
The Duttons concede that, as the record shows, Premier, as the assignee of the "Retail Installment Contract and Security Agreement," is clearly within the scope of the arbitration agreement. See, also, Nissan Motor Acceptance Corp. v. Ross, 703 So.2d 324 (Ala.1997) (a valid assignment gives the assignee the right to invoke an arbitration provision agreed to by the assignor). The Duttons argue only that the trial court's order can be affirmed on the ground that Premier waived its right to arbitrate by substantially invoking the litigation process and thereby prejudicing their ability to seek redress. However, the arbitration provision in the "Buyer's Order" states that this issue is reserved for the arbitrator. Therefore, based on the clear wording of that arbitration provision, we conclude that the Duttons agreed to submit that arbitrability issue to arbitration. See First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). The record indicates that the trial court erred if it denied Premier's motion on the ground of waiver.[3] Furthermore, we can find nothing in the record that would support the trial court's order on some other ground.
The order is reversed to the extent it denied arbitration of the claim against Premier, and as to those claims the case is remanded.

III. Edwards
We conclude that the trial court erred in requiring Edwards to initiate arbitration and to bear all of the costs of arbitration. We are not persuaded by the Duttons' argument that it was within the trial court's discretion to relieve them of their obligation to pay their share of the *570 arbitration costs. The arbitration provision in the "Buyer's Order" reserves "issues of unfairness" to the arbitrator. In addition, both of the arbitration provisions agreed to by the Duttons clearly state that any covered disputes are to be resolved by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association ("AAA"). The United States Supreme Court has held that arbitration provisions cannot be singled out and subjected to rules of construction that are different from, or more stringent than, the rules of construction applied to contracts generally; therefore, general rules of contract interpretation apply to arbitration provisions. Doctor's Associates, Inc. v. Casarotto, 517 U.S. 681, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996).
General contract law requires a court to enforce, as it is written, an unambiguous and lawful contract. A court may not make a new contract for the parties or rewrite their contract under the guise of construing it. This Court has recently held, in the case of an automobile purchaser who had sued the seller, that the purchaser was the "claimant" or "initiating party" under the AAA's Commercial Arbitration Rules and that financial hardship alone is not sufficient to allow a court to relieve a party of his or her agreement to arbitrate in accordance with the rules. See Ex parte Dan Tucker Auto Sales, Inc., 718 So.2d 33 (Ala.1998).
In this present case, the Duttons are the "claimants." Rule 48 of the AAA's Commercial Arbitration Rules states that "[t]he filing fee shall be advanced by the initiating party or parties [the Duttons], subject to final apportionment by the arbitrator in the award." Rule 48 also provides that "in the event of extreme hardship on the part of any party" the arbitrator can "defer or reduce the administrative fees." In addition, although the AAA's Commercial Arbitration Rules contemplate that the parties will share expenses, Rule 43 authorizes the arbitrator to apportion all administrative fees, miscellaneous expenses, and arbitrator compensation to one party or the other. As this Court noted in Ex parte Dan Tucker Auto Sales, supra, at 38, "[t]he AAA's Commercial Arbitration Rules discourage frivolous claims, and, at the same time, they take into account the needs of financially distressed claimants." The allocation of costs is for the arbitrator, in accordance with the agreement of the parties. Therefore, the court erred in ordering Edwards to bear all the costs of arbitration.

IV. Summary
The trial court's order is affirmed with respect to GM and Universal; however, to the extent it denied Premier's motion, it is reversed and the case is remanded. A writ of mandamus will issue directing the trial court to vacate its order requiring Edwards to initiate arbitration and to pay all of the costs of arbitration.
1971279AFFIRMED.
1971286AFFIRMED.
1971693REVERSED AND REMANDED.
1971316WRIT GRANTED.
KENNEDY, COOK, LYONS, and BROWN, JJ., concur.
HOOPER, C.J., and MADDOX and SEE, JJ., concur in part and dissent in part.
MADDOX, Justice (concurring in part and dissenting in part).
I concur in Part II of the majority opinion, relating to case 1971693 and holding that the plaintiffs' claims against Premier are subject to arbitration. I also concur in Part III, relating to case 1971316 and holding that the "allocation of costs" between the plaintiffs and Edwards is a matter "for the arbitrator" to decide. 736 So.2d at 570.
I must respectfully dissent, however, from the holding in Part I, relating to cases 1971279 and 1971286. I believe the scope of the arbitration clause in the Buyer's *571 Order is sufficiently broad to encompass the plaintiffs' claims against General Motors and Universal. See Ex parte Stripling, 694 So.2d 1281 (Ala.1997) (Maddox, J., concurring in part and dissenting in part).
HOOPER, C.J., and SEE, J., concur.
NOTES
[1] A direct appeal is the generally accepted method for obtaining review of a trial court's order denying a motion to compel arbitration. A petition for a writ of mandamus is the generally accepted method for obtaining review of an order granting a motion to compel arbitration. See Thompson v. Skipper Real Estate Co., 729 So.2d 287 (Ala.1999).
[2] We would have reached this same conclusion even if the terms and provisions of the "Buyer's Order" were not specifically incorporated into the "Retail Installment Contract and Security Agreement." See Haddox v. First Alabama Bank of Montgomery, N.A., 449 So.2d 1226, 1229 (Ala.1984) ("two or more instruments executed contemporaneously by the same parties in reference to the same subject matter constitute one contract and should be read together in construing the contract"); ANCO TV Cable Co. v. Vista Communications, Ltd. Partnership I, 631 So.2d 860, 863 (Ala.1993) ("where there is more than one writing involved in a transaction, the court interprets the writings together").
[3] We note that the record, as well as statements in and attachments to Premier's briefs, indicate the following: The Duttons served Premier with their complaint on February 19, 1997. On March 19, 1997, Premier joined Edwards in seeking a change of venue. On April 23, 1997, Premier, through counsel, attended two depositions of Edwards's employees (the depositions had been noticed by the Duttons), and on May 13, 1997, Premier responded to discovery requests (requests for admission and requests for production) that had been served by the Duttons with their complaint. Although it cannot cite to a page in the record for support, Premier strenuously argues that on May 20, 1997, it made an oral motion, during a hearing in open court, to compel arbitration and that the trial court took that motion under consideration and indicated that it would rule first on the venue motion. (Counsel for Edwards corroborate Premier's argument, stating in their brief that "Premier orally joined in the motions to compel arbitration at this hearing.") On July 1, 1997, Premier submitted answers to the interrogatories that had been served on it with the complaint. On April 3, 1998, the trial court ruled on the other defendants' motions to compel arbitration. On April 13, 1998, Premier filed a written motion to compel arbitration. The trial court denied that motion on June 22, 1998.

The following principles should guide the arbitrator's decision: A waiver of the right to compel arbitration is not lightly inferred, and the burden on the party arguing waiver is necessarily a heavy one. Mutual Assur., Inc. v. Wilson, 716 So.2d 1160 (Ala.1998). Moving for a change of venue and participating in only limited discovery are not sufficient to demonstrate a waiver of the right to arbitrate. See Thompson v. Skipper Real Estate (cited in n. 1); Mutual Assur., Inc. v. Wilson, supra.