991 So.2d 1281 (2008)
CHRIS MYERS PONTIAC-GMC, INC., d/b/a Chris Myers Automotive
v.
Larry C. PEROT and Bobbi M. Perot.
1061090.
Supreme Court of Alabama.
April 18, 2008.
David P. Shepherd, Fairhope, for appellant.
Thomas P. Ollinger, Jr., Mobile, for appellees.
STUART, Justice.
Chris Myers Pontiac-GMC, Inc., d/b/a Chris Myers Automotive, appeals the order of the Mobile Circuit Court denying its motion to compel arbitration of the claims asserted against it by Larry C. Perot and Bobbi M. Perot. We reverse and remand.

I.
On July 31, 2002, the Perots purchased a 2002 GMC Savana conversion van from Chris Myers Automotive. The van was manufactured by General Motors Corporation ("GM"); however, it was built as an incomplete vehicle and was finished by Bodar Corporation d/b/a Explorer Vans. At the time of purchase, the Perots signed an arbitration agreement that provided, in relevant part, as follows:

*1282 "Buyer/Lessee and Dealer agree that all claims, demands, disputes, or controversies of every kind or nature between them arising from, concerning, or relating to any of the negotiations involved in the sale, lease, or financing of the vehicle/watercraft; the terms and provisions of the sale, lease, or financing agreements; the purchase of insurance, extended warranties, service contracts, or other products purchased as an incident to the sale, lease, or financing of the vehicle/watercraft; the performance or condition of the vehicle/watercraft; any trade-in vehicle involved in any such sale or lease transaction; or any other aspects of the vehicle/watercraft and its sale, lease, or financing shall be settled by binding arbitration conducted pursuant to the provisions of the Federal Arbitration Act, 9 U.S.C. § 1 et seq., and according to the Commercial Arbitration Rules of the American Arbitration Association and/or its agent....
"Either party may demand arbitration by filing with the American Arbitration Association a written Demand for Arbitration along with a statement of the matter in controversy. It is further understood and agreed between Buyer/Lessee and Dealer that the aggrieved party shall be responsible for payment of the appropriate filing fee as required by the American Arbitration Association...."[1]
After purchasing the van, the Perots had a recurring problem with water leaking into the vehicle. Within approximately a one-year period following their purchase of the van, the Perots had the van serviced by Chris Myers Automotive four times for the water-leakage problem. On each occasion, the repairs were covered by the warranty.
On December 22, 2004, the Perots sued Chris Myers Automotive, GM, and Explorer Vans in the Mobile Circuit Court, asserting claims of negligence, violation of the Alabama Extended Manufacturer's Liability Doctrine, and breach of express and implied warranties based on the water-leakage problem. On June 3, 2005, Chris Myers Automotive moved the trial court to compel arbitration of the Perots' claims against it pursuant to the arbitration agreement they had signed when they purchased the van; the trial court granted the motion on August 12, 2005.
The Perots continued to prosecute their claims against GM and Explorer Vans; however, neither the Perots nor Chris Myers Automotive initiated arbitration proceedings. On December 29, 2006, the Perots moved the trial court to compel Chris Myers Automotive to initiate arbitration proceedings or, in the alternative, to reconsider its August 12, 2005, order compelling arbitration and allow them to litigate their claims against Chris Myers Automotive in that court. On March 16, 2007, approximately three days after the Perots' claims against GM and Explorer Vans were dismissed with prejudice pursuant to a settlement agreement, the trial court entered an order stating "Defendant's motion to compel arbitration is denied, ex mero motu." On April 27, 2007, Chris Myers Automotive filed its notice of appeal challenging that order.

II.
Our standard of review of a ruling on a motion to compel arbitration is well-settled:
"`This Court reviews de novo the denial of a motion to compel arbitration. Parkway Dodge, Inc. v. Yarbrough, 779 *1283 So.2d 1205 (Ala.2000). A motion to compel arbitration is analogous to a motion for a summary judgment. TranSouth Fin. Corp. v. Bell, 739 So.2d 1110, 1114 (Ala.1999). The party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration and proving that the contract evidences a transaction affecting interstate commerce. Id. "[A]fter a motion to compel arbitration has been made and supported, the burden is on the non-movant to present evidence that the supposed arbitration agreement is not valid or does not apply to the dispute in question." Jim Burke Automotive, Inc. v. Beavers, 674 So.2d 1260, 1265 n. 1 (Ala. 1995) (opinion on application for rehearing).'"
Elizabeth Homes, L.L.C. v. Gantt, 882 So.2d 313, 315 (Ala.2003) (quoting Fleetwood Enters., Inc. v. Bruno, 784 So.2d 277, 280 (Ala.2000)).

III.
In conjunction with its June 3, 2005, motion to compel arbitration, Chris Myers Automotive submitted to the trial court copies of the arbitration agreement signed by the Perots, as well as evidence indicating that the van purchased by the Perots had been manufactured by GM in Missouri, finished by Explorer Vans in Indiana, and then sent to Chris Myers Automotive in Daphne, where it was sold to the Perots. This evidence of the existence of "a contract calling for arbitration and proving that the contract evidences a transaction affecting interstate commerce" was not refuted by the Perots. Elizabeth Homes, 882 So.2d at 315. Because Chris Myers Automotive had met its burden, the trial court, on August 12, 2005, granted its motion to compel arbitration.
Nevertheless, on March 16, 2007, the trial court entered an order ex mero motu denying the same motion to compel arbitration it had granted on August 12, 2005. The record does not contain an explanation for that reversal; however, because no evidence had been submitted indicating that the arbitration agreement signed by the Perots was invalid or that it did not apply to the dispute in question, we presume that that decision was made in response to the Perots' motion asking the trial court to compel Chris Myers Automotive to commence arbitration proceedings or, in the alternative, to allow the Perots to pursue their claims against Chris Myers Automotive in that court. Indeed, the Perots argue to this Court that the trial court correctly held that, at the time the Perots filed their motion to compel Chris Myers Automotive to initiate arbitration or allow them to proceed to litigation, Chris Myers Automotive had waived its right to enforce the arbitration agreement by failing to initiate arbitration proceedings for approximately 17 months after the trial court first granted its motion to compel arbitration. Chris Myers Automotive argues that it never waived its right to arbitration and that the obligation to commence the arbitration proceedings rested with the Perots. For the reasons that follow, we agree with Chris Myers Automotive.
This Court has held that a trial court, in granting a motion to compel arbitration, cannot alter or ignore the terms of the arbitration agreement that provides the basis for compelling arbitration. See, e.g., Southern Energy Homes Retail Corp. v. McCool, 814 So.2d 845, 849 (Ala.2001) (granting the petition for the writ of mandamus where the trial court "failed to compel arbitration in a manner consistent with the terms of [the] arbitration provision"); and Ex parte Cappaert Manufactured Homes, 822 So.2d 385, 387 (Ala.2001) ("[Section] 5 [of the Federal Arbitration Act] mandates that the method set forth in *1284 the arbitration agreement be followed."). The arbitration agreement in the present case provides:
"Either party may demand arbitration by filing with the American Arbitration Association a written Demand for Arbitration along with a statement of the matter in controversy. It is further understood and agreed between Buyer/Lessee and Dealer that the aggrieved party shall be responsible for payment of the appropriate filing fee as required by the American Arbitration Association...."
"`Agreements to arbitrate are essentially creatures of contract,' and ordinary contract rules govern the interpretation of arbitration provisions." Orkin Exterminating Co. v. Larkin, 857 So.2d 97, 103 (Ala.2003) (quoting Blount Int'l, Ltd. v. James River-Pennington, Inc., 618 So.2d 1344, 1346 (Ala.1993)). "When interpreting a contract, a court should give the terms of the contract their clear and plain meaning and should presume that the parties intended to do what the terms of the agreement clearly state." Brewbaker Motors, Inc. v. Belser, 776 So.2d 110, 112 (Ala.2000). The clear and plain meaning of the language in the arbitration agreement the Perots signed indicates that although either party may enforce the arbitration agreement, it is the burden of the "aggrieved party"  the Perots in this case  to initiate the arbitration process by filing a demand for arbitration and by paying the filing fee. This requirement is logical as well because the aggrieved party is best situated to produce a statement of the controversy and to pay the filing fee  which is determined by the amount of the aggrieved party's claim, an amount presumably not known by the defendant until the claim is made.
Moreover, the arbitration agreement also specifically provides that any disputes "shall be settled by binding arbitration conducted pursuant to the provisions of the Federal Arbitration Act, 9 U.S.C. § 1 et seq., and according to the Commercial Arbitration Rules of the American Arbitration Association and/or its agent...." The parties in this case have not referred to the Commercial Arbitration Rules of the American Arbitration Association ("AAA") or submitted them into the record; however, we have quoted those rules in previous cases, and other courts have found it appropriate to take judicial notice of their content. See, e.g., Century Satellite, Inc. v. Echostar Satellite, L.L.C., 395 F.Supp.2d 487, 493 (S.D.Tex.2005) ("The Court takes judicial notice that the AAA's Commercial Arbitration Rules allow for the appointment of arbitrators in accord with a method specified by agreement of the parties."). In Northcom, Ltd. v. James, 848 So.2d 242, 246 (Ala.2002), we noted that the Commercial Rules of the AAA provide as follows:
"`R-4. Initiation under an Arbitration Provision in a Contract
"`(a) Arbitration under an arbitration provision in a contract shall be initiated in the following manner:
"`i. The initiating party (the "claimant") shall, within the time period, if any, specified in the contract(s), give to the other party (the "respondent") written notice of its intention to arbitrate (the "demand"), which demand shall contain a statement setting forth the nature of the dispute, the names and addresses of all other parties, the amount involved, if any, the remedy sought, and the hearing locale requested.
"`ii. The claimant shall file at any office of the AAA two copies of the demand and two copies of the arbitration provisions of the contract, together with the appropriate filing fee as *1285 provided in the schedule included with these rules.
"`iii. The AAA shall confirm notice of such filing to the parties.'"
Under this rule, it is clear that the "claimant," that is, the party asserting a claim, has the burden of initiating arbitration.
Chris Myers Automotive had no obligation under the arbitration agreement to initiate arbitration proceedings in the event the Perots had a grievance concerning their purchase of the van. Chris Myers Automotive therefore could not have waived its right to require the Perots to arbitrate their claims by failing to start the arbitration process after the trial court granted its motion to compel arbitration.[2]

IV.
Chris Myers Automotive submitted evidence showing that the Perots signed a contract agreeing that all disputes between them related to the Perots' purchase of the 2002 GMC Savana conversion van would be settled in arbitration and that that purchase was a transaction affecting interstate commerce. The Perots did not refute that evidence, nor did they establish that Chris Myers Automotive waived its right to rely on that arbitration agreement. Therefore, the trial court erred by denying Chris Myers Automotive's motion to compel arbitration and its March 16, 2007, order so doing is hereby reversed, and the cause is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
COBB, C.J., and LYONS and BOLIN, JJ., concur.
MURDOCK, J., concurs in the result.
MURDOCK, Justice (concurring in the result).
The contract between the parties states:
"Buyer/Lessee and Dealer agree that all claims, demands, disputes, or controversies of every kind or nature between them arising from, concerning, or relating to any of the negotiations involved in the sale, lease, or financing of the vehicle/watercraft; the terms and provisions of the sale, lease, or financing agreements; the purchase of insurance, extended warranties, service contracts, or other products purchased as an incident to the sale, lease, or financing of the vehicle/watercraft; the performance or condition of the vehicle/watercraft; any trade-in vehicle involved in any such sale or lease transaction; or any other aspects of the vehicle/watercraft and its sale, lease, or financing shall be settled by binding arbitration conducted pursuant to the provisions of the Federal Arbitration Act, 9 U.S.C. § 1 et seq., and according to the Commercial Arbitration Rules of the American Arbitration Association and/or its agent....

*1286 "Either party may demand arbitration by filing with the American Arbitration Association a written Demand for Arbitration along with a statement of the matter in controversy. It is further understood and agreed between Buyer/Lessee and Dealer that the aggrieved party shall be responsible for payment of the appropriate filing fee as required by the American Arbitration Association...."
(Emphasis added.) The emphasized portions of the contract, read together and as juxtaposed in the quoted passage, make it clear that, in the event of a dispute such as the one at issue, "[e]ither party may demand," or initiate, arbitration in order to resolve that dispute.[3]
The Perots seem to be operating under the impression, however, that the trial court's August 12, 2005, order concerning arbitration recognized a unique right or obligation on the part of Chris Myers Automotive ("Chris Myers") to initiate arbitration. It did not. Consistent with the parties' contract, the trial court's order simply amounted to a ruling that if the parties, or either of them, desired to obtain a third-party resolution of the dispute that had arisen between them, such a resolution would have to come from an arbitration proceeding rather than a judicial proceeding.
In its August 2005 order, the trial court could not properly, and I see no indication that it purported to, alter the simple and straightforward "either-party-may-demand" language of the contract. Instead, after the trial court ruled that any third-party resolution of the dispute must come from an arbitration panel rather than a court of law, if "either party" still desired a resolution of their dispute by a third party, the onus fell on that party to initiate the process by which that resolution could be obtained. The Perots were not in a position to sit back and do nothing in the wake of the trial court's August 2005 order and then, after 17 months had passed, take the position that that order vested some right or obligation unique to Chris Myers to formally initiate the arbitration process and that, because of Chris Myers's similar inaction during that same period, the parties must now return to court to litigate their dispute.[4] It is on this basis alone that I concur in the result reached by the main opinion.
As a corollary, I must decline to join in those portions of the main opinion in which the Court indicates that the contract language at issue extended some right  or some concomitant responsibility or obligation  to the Perots to initiate arbitration in a manner that it did not to Chris Myers. Under the "clear and plain meaning" of the contract language at issue, "[e]ither party" had the right, if it desired a third-party resolution of the dispute that had arisen between them, to initiate arbitration proceedings. Under that same "clear and plain" language, "[e]ither party" had the obligation, if it desired a third-party resolution of that dispute, to initiate arbitration proceedings. The contract did place a special obligation on the Perots, as the "aggrieved party," to pay the filing fee in the event their claims were arbitrated. All the *1287 contract had to say about who was to initiate the arbitration process, however, was that "[e]ither party" could do so. I believe the suggestion in the main opinion that the contract placed the Perots in some different position than it did Chris Myers with respect to the initiation of arbitration is unnecessary to the result reached and is at odds with the plain and simple "[e]ither party" language of the contract; it unnecessarily reads something into the filing-fee clause in the contract that is not in its plain language either.[5]
NOTES
[1] As part of their purchase of the van, the Perots also signed a form labeled "Retail Buyer's Order" that contained a substantially identical arbitration provision.
[2] We note that this case differs from Mangiafico v. Street, 767 So.2d 1103 (Ala.2000), in which a plurality of this Court affirmed the trial court's decision to dismiss with prejudice the plaintiffs' claims after they were ordered to commence arbitration within 30 days and subsequently failed to do so. In that case, the arbitration provision agreed to by the parties gave no indication as to which party had the responsibility for initiating arbitration proceedings in the event of a dispute. The trial court therefore, by written order, placed that responsibility upon the plaintiffs. In contrast, the arbitration provision in the present case indicates that the aggrieved party should initiate arbitration by filing a demand and paying the filing fee and that the arbitration proceedings would be conducted pursuant to the Commercial Arbitration Rules of the AAA, which place the burden of initiating arbitration on the "claimant." Moreover, there is no evidence in the record indicating that the trial court, rightfully or wrongfully, ever ordered Chris Myers Automotive to initiate arbitration.
[3] Although a party in the position of Chris Myers Automotive might be thought of as less likely to initiate an arbitration proceeding, its doing so would be comparable to a potential defendant filing a declaratory-judgment action in a court of law to resolve a dispute between it and a potential plaintiff.
[4] After being told by the trial court that any third-party resolution of the dispute must come from an arbitration panel rather than a court, the Perots were free to choose simply to abandon their claim  a choice that, but for the motion filed by the Perots 17 months later, it would appear the Perots made.
[5] The main opinion seeks to bolster its view by noting the passage in the parties' contract that provides that a dispute "shall be settled by binding arbitration conducted pursuant to the provisions of the Federal Arbitration Act, 9 U.S.C. § 1 et seq., and according to the Commercial Arbitration Rules of the American Arbitration Association and/or its agent." The main opinion takes judicial notice of the Commercial Rules of the American Arbitration Association, and then relies specifically upon the following definitional phrase contained within Rule R-4(a)i: "[t]he initiating party (the `claimant')."

The quoted phrase defines the term "claimant" as meaning the party, whichever party that might be, that initiates the arbitration process. It does not define the term "initiating party" as the party who has some grievance or claim against another. It simply establishes the shorthand label of "claimant" for the party who first takes the formal step of requesting a resolution of a dispute by arbitration. (Presumably, it does so because this term is more apt than the term "plaintiff" in the context of an arbitration proceeding and because it is indeed suggestive of the fact that the party being referenced is the party who has first "claimed" a resolution of the parties' dispute by arbitration.) I see nothing in this definitional phrase that purports to establish a substantive rule that only a party allegedly wronged, as opposed to an alleged wrongdoer, must be the party that first demands the arbitration. In short, the plain language of the rule means simply that whichever party "initiates" or "demands" the arbitration will thenceforth be referred to for purposes of the rules as the "claimant," not that it is only an aggrieved party who can initiate or demand an arbitration proceeding. Furthermore, an attempt to read this language otherwise ignores the reality that in many cases all the parties (and often there are more than two) may have claims and cross-claims against each other and that each of them is typically given the contractual right to initiate or demand arbitration.
Moreover, the contract at issue here provides merely that the arbitration shall be "conducted" pursuant to the Federal Arbitration Act and the Commercial Rules of the American Arbitration Association. This reference to how an arbitration is to be "conducted" cannot reasonably be read as contradicting or overriding the more specific, and the more explicit, clause elsewhere in the contract that expressly states that any "disputes... between [the parties] ... shall be settled by binding arbitration" and then continues in the first sentence in the next paragraph by stating that "[e]ither party may demand" that arbitration.