PARKER, Justice.
Jimmy E. Nation, Oliver D. McCollum, James P. Pickle, James W. Nation, Micah J. Nation, and Benjamin J. Chemeel II (hereinafter collectively referred to as "the defendants") appeal the Jefferson Circuit Court's denial of their motion to compel arbitration of a breach-of-contract claim filed against them by the Lydmar Revocable Trust ("Lydmar").
Facts and Procedural History
Lydmar owned a 75% membership interest in Aldwych, LLC. On March 27, 2008, Lydmar and the defendants entered into an agreement ("the agreement") pursuant to which Lydmar agreed to sell its membership interest in Aldwych, LLC, to the defendants for a purchase price of $1,550,000. The defendants paid Lydmar $900,000 at the time the agreement was executed and simultaneously executed two promissory notes for the balance of the purchase price.
The agreement contains a section entitled "Arbitration," which states:
"16.1 This Agreement provides for binding arbitration, which is the final, exclusive and required forum for the resolution of all disputes that may occur between the parties ... that are based on a 'legal claim.' If the dispute cannot be resolved and the matter is based upon a legal claim, the parties ... may initiate the arbitration process at any time, even if suit has already been filed. A dispute is based upon a 'legal claim' and is subject to this agreement if it *786 arises or involves a claim under any federal, state or local statute, regulation, or common law doctrine. ...
"16.2 The rules and procedures to be used by the parties are based on the rules of the American Arbitration Association ('AAA'). The parties hereto reserve the right to mutually agree to modify or expand these rules and procedures.
"16.3 The arbitrator shall follow the rules of law of the State of Alabama, any applicable Federal law, any applicable statute of limitations, and any rules stated in the Agreement. The arbitrator shall have the authority to grant any remedy or relief that the arbitrator deems just and equitable and which is consistent with applicable law.
"16.4 The expenses of witnesses or experts for either side shall be paid by the party requiring the presence of such witnesses. Each side shall pay its own legal fees and expenses.
"16.5 To the fullest extent available under the law, the parties ... hereby waive their right to a trial before a jury for a legal claim, even if a court holds the other provisions of this Agreement unenforceable."
Additionally, the promissory notes contain nearly identical arbitration provisions to the one in the agreement.
On December 31, 2014, Lydmar sued the defendants asserting that the defendants had breached the agreement and the accompanying promissory notes. Specifically, Lydmar alleged that the defendants had breached their promises to repay the notes by failing to make the required payments. On March 5, 2015, the defendants filed an answer to Lydmar's complaint and asserted counterclaims alleging fraud, breach of contract and/or failure of consideration, fraudulent transfer of assets, and constructive trust.
At the request of the parties, the circuit court delayed setting the matter for a bench trial until they had an opportunity to resolve the case without a trial. The parties' attempts failed. Accordingly, on May 31, 2016, the defendants filed a motion to compel arbitration of Lydmar's breach-of-contract claim. Lydmar did not file a response to the defendants' motion to compel arbitration.
On July 7, 2016, the circuit court granted the defendants' motion to compel arbitration. The circuit court's order states, in pertinent part: "The cou[rt] finds a valid arbitration agreement governs the promissory note issues of [Lydmar's] claims and allegations.[1] Further, the written agreement involves interstate commerce and is within the provisions of the Federal Arbitration Act." The circuit court further ordered the clerk of the circuit court to place the case on the circuit court's administrative docket "pending further orders of this court."
However, after the circuit court ordered the arbitration of Lydmar's claim, neither the defendants nor Lydmar initiated the arbitration process. Accordingly, on February 6, 2017, the defendants filed with the circuit court a motion to dismiss Lydmar's breach-of-contract claim; the motion was based on Lydmar's failure to initiate the arbitration proceedings. The defendants argued that it was Lydmar's responsibility to initiate the arbitration process and that Lydmar had failed to take any action toward fulfilling its responsibility to do so. Accordingly, citing Rule 41(b), Ala. R. Civ. P., the defendants requested that Lydmar's claim be dismissed without prejudice.
*787 On March 2, 2017, Lydmar filed a response to the defendants' motion to dismiss. Lydmar did not contest the existence of the arbitration provisions requiring arbitration of its claim, but argued only that, under the Commercial Arbitration Rules of the American Arbitration Association ("AAA"), the defendants, and not Lydmar, had the responsibility to initiate the arbitration process. Because the defendants failed to do so in a reasonable time, Lydmar argued, the case was due to be returned to the active docket of the circuit court so that Lydmar could litigate its claim against the defendants in that court.
On March 15, 2017, the circuit court denied the defendants' motion to dismiss. In the same order, the circuit court ordered the clerk of the circuit court to return the case to the active docket. Although not expressly stated in the order, it appears that the circuit court, by returning the case to the active docket, effectively reversed its own order entered on July 7, 2016, granting the defendants' motion to compel arbitration. On March 22, 2017, the circuit court entered a scheduling order setting the case for a bench trial to occur during the week of June 5, 2017. The defendants appealed.
Standard of Review
Our standard of review of a ruling on a motion to compel arbitration is well settled:
" ' "This Court reviews de novo the denial of a motion to compel arbitration. Parkway Dodge, Inc. v. Yarbrough, 779 So.2d 1205 (Ala. 2000). A motion to compel arbitration is analogous to a motion for a summary judgment. TranSouth Fin. Corp. v. Bell, 739 So.2d 1110, 1114 (Ala. 1999). The party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration and proving that the contract evidences a transaction affecting interstate commerce. Id.'[A]fter a motion to compel arbitration has been made and supported, the burden is on the non-movant to present evidence that the supposed arbitration agreement is not valid or does not apply to the dispute in question.' Jim Burke Automotive, Inc. v. Beavers, 674 So.2d 1260, 1265 n. 1 (Ala. 1995) (opinion on application for rehearing)." ' "
Chris Myers Pontiac-GMC, Inc. v. Perot, 991 So.2d 1281, 1282-83 (Ala. 2008) (quoting Elizabeth Homes, L.L.C. v. Gantt, 882 So.2d 313, 315 (Ala. 2003), quoting in turn Fleetwood Enters., Inc. v. Bruno, 784 So.2d 277, 280 (Ala. 2000) ).
Discussion
The defendants first argue on appeal that they met their initial "burden of proving the existence of a contract calling for arbitration and proving that the contract evidences a transaction affecting interstate commerce." Perot, 991 So.2d at 1283. In support of their motion to compel arbitration, the defendants submitted to the circuit court copies of the agreement and the promissory notes, each of which contains an arbitration provision. Based on the agreement and promissory notes, the defendants demonstrated that their purchase of Lydmar's membership interest in Aldwych is a transaction affecting interstate commerce. This evidence of the existence of "a contract calling for arbitration and ... that the contract evidences a transaction affecting interstate commerce" was not refuted by Lydmar. Id. In fact, Lydmar did not even file a response to the defendants' motion to compel arbitration and offers no argument on appeal concerning this issue. Because the defendants had met their burden and Lydmar made no response, the circuit court, on July 7, 2016, granted the defendants' motion to compel arbitration.
*788 Nevertheless, on March 15, 2017, the circuit court entered an order returning the case to the court's active docket. On March 22, 2017, the circuit court then entered a scheduling order setting the case for a bench trial during the week of June 5, 2017. We interpret those orders as effectively reversing its decision on the same motion to compel arbitration filed by the defendants that the circuit court had granted on July 7, 2016. The circuit court did not provide any reasoning explaining its reversal, and we can find no definite explanation in the record before us. However, because Lydmar did not produce any evidence indicating that the arbitration provisions in the agreement and promissory notes were invalid or that they did not apply to the dispute in question, we presume that the circuit court found convincing Lydmar's argument, made in response to the defendants' motion to dismiss, that the obligation to initiate the arbitration process was on the defendants and, by failing to initiate the process in a reasonable time, the defendants had waived their right to arbitration. This is the very argument Lydmar makes to this Court on appeal. The defendants argue that nothing in the arbitration provisions or the Commercial Arbitration Rules of the AAA place on the defendants an obligation to initiate the arbitration process and, thus, that they did not waive their right to arbitration by failing to initiate the arbitration process. We agree with the defendants.
In order to determine if the circuit court erred in reversing its order granting the motion to compel arbitration and returning the case to the active docket, we must determine whether the arbitration provisions in the agreement and the notes, which incorporate the Commercial Arbitration Rules of the AAA, placed an obligation on the defendants to initiate the arbitration process. In answering this question, we must, of course, look to the terms of the arbitration provisions. In Perot, this Court stated:
"This Court has held that a trial court, in granting a motion to compel arbitration, cannot alter or ignore the terms of the arbitration agreement that provides the basis for compelling arbitration. See, e.g., Southern Energy Homes Retail Corp. v. McCool, 814 So.2d 845, 849 (Ala. 2001) (granting the petition for the writ of mandamus where the trial court 'failed to compel arbitration in a manner consistent with the terms of [the] arbitration provision'); and Ex parte Cappaert Manufactured Homes, 822 So.2d 385, 387 (Ala. 2001) ('[Section] 5 [of the Federal Arbitration Act] mandates that the method set forth in the arbitration agreement be followed.').... ' "Agreements to arbitrate are essentially creatures of contract," and ordinary contract rules govern the interpretation of arbitration provisions.' Orkin Exterminating Co. v. Larkin, 857 So.2d 97, 103 (Ala. 2003) (quoting Blount Int'l, Ltd. v. James River-Pennington, Inc., 618 So.2d 1344, 1346 (Ala. 1993) ). 'When interpreting a contract, a court should give the terms of the contract their clear and plain meaning and should presume that the parties intended to do what the terms of the agreement clearly state.' Brewbaker Motors, Inc. v. Belser, 776 So.2d 110, 112 (Ala. 2000)."
991 So.2d at 1283-84. The arbitration provisions at issue in the present case all essentially state, in pertinent part:
"This Agreement provides for binding arbitration, which is the final, exclusive and required forum for the resolution of all disputes that may occur between the parties ... that are based on a 'legal claim.' If the dispute cannot be resolved and the matter is based upon a legal claim, the parties ... may initiate the *789 arbitration process at any time, even if suit has already been filed. A dispute is based upon a 'legal claim' and is subject to this agreement if it arises or involves a claim under any federal, state or local statute, regulation, or common law doctrine. ..."
Nothing in the arbitration provisions requires the defendants to initiate the arbitration process. The arbitration provisions simply state that "the parties ... may initiate the arbitration process at any time." (Emphasis added.) No language requires either party to initiate the arbitration process. Therefore, under the plain language of the arbitration provisions, we cannot conclude that the arbitration provisions require the defendants to initiate the arbitration process.
The defendants also argue that nothing in the Commercial Arbitration Rules of the AAA, which are incorporated into the arbitration provisions, requires them to initiate the arbitration process. This Court considered a similar situation in Perot, supra. In Perot, Larry C. Perot and Bobbi M. Perot purchased a vehicle from Chris Myers Pontiac-GMC, Inc., d/b/a Chris Myers Automotive. At the time of the purchase, the Perots signed an arbitration agreement. After purchasing the vehicle, the Perots sued Chris Meyers Automotive, alleging various claims related to a water-leakage problem with the purchased vehicle. Chris Meyers Automotive filed a motion to compel arbitration of the Perots' claims, which the circuit court granted. However, neither party initiated the arbitration process. Accordingly, the Perots filed a motion with the circuit court requesting that the circuit court compel Chris Meyers Automotive to initiate the arbitration process or, in the alternative, to reconsider its order compelling arbitration and allow them to litigate their claims against Chris Myers Automotive in that court. The circuit court entered an order stating that it was ex mero motu denying Chris Meyers Automotive's motion to compel arbitration. Chris Meyers Automotive appealed.
On appeal, this Court explained that the issue to be decided was whether Chris Meyers Automotive had the obligation to initiate the arbitration process and, if so, whether Chris Meyers Automotive had waived its right to arbitration by failing to initiate the process. This Court addressed the issue on two alternative grounds. First, this Court determined that the language of the arbitration agreement in that case, unlike the language in the arbitration provisions at issue in this case, obligated the Perots, as the plaintiffs, to initiate the arbitration process.
Second, in addition to the plain language of the arbitration agreement, this Court also determined that the Commercial Arbitration Rules of the AAA, which had been incorporated into the arbitration agreement at issue in Perot, obligated the plaintiffs to initiate the arbitration process. The applicable rule was Rule R-4 of the Commercial Arbitration Rules of the AAA, which is also the applicable rule in this case and which stated, at that time:
" ' "R-4. Initiation under an Arbitration Provision in a Contract
" ' "(a) Arbitration under an arbitration provision in a contract shall be initiated in the following manner:
" ' "i. The initiating party (the 'claimant') shall, within the time period, if any, specified in the contract(s), give to the other party (the 'respondent') written notice of its intention to arbitrate (the 'demand'), which demand shall contain a statement setting forth the nature of the dispute, the names and addresses of all other parties, the amount involved, if any, the remedy sought, and the hearing locale requested.
*790 " ' "ii. The claimant shall file at any office of the AAA two copies of the demand and two copies of the arbitration provisions of the contract, together with the appropriate filing fee as provided in the schedule included with these rules.
" ' "iii. The AAA shall confirm notice of such filing to the parties." ' "
Perot, 991 So.2d at 1284-85 (quoting Northcom, Ltd. v. James, 848 So.2d 242, 246 (Ala. 2002), quoting in turn the Commercial Arbitration Rules of the AAA). This Court concluded that, "[u]nder this rule, it is clear that the 'claimant,' that is, the party asserting a claim, has the burden of initiating arbitration." 991 So.2d at 1285. Accordingly, this Court determined in Perot that, under the Commercial Arbitration Rules of the AAA, the obligation to initiate the arbitration proceedings rested with the plaintiffs. See also Northcom, Ltd. v. James, 848 So.2d at 246 (relying upon Ex parte Dan Tucker Auto Sales, Inc., 718 So.2d 33 (Ala. 1998), Huntley v. Regions Bank, 807 So.2d 512 (Ala. 2001), and Universal Underwriters Life Ins. Co. v. Dutton, 736 So.2d 564 (Ala. 1999), in holding that, under a previous, but similar, version of Rule R-4, "the party asserting a legal claim, i.e., the plaintiff, must initiate arbitration proceedings").
As in Perot, the arbitration provisions here also incorporate the entirety of the Commercial Arbitration Rules of the AAA; the parties agree that the Commercial Arbitration Rules of the AAA apply. The parties further agree that Rule R-4 is the applicable rule that answers the question this Court has been asked to decide. This is the same rule this Court interpreted in Perot to mean that the plaintiff has the burden to initiate the arbitration process once the circuit court has entered an order compelling arbitration. However, as Lydmar notes, Rule R-4 has been amended since Perot, Northcom, Ex parte Dan Tucker Auto Sales, Huntley, and Dutton were decided. Rule R-4 now states:
"R-4. Filing Requirements
"(a) Arbitration under an arbitration provision in a contract shall be initiated by the initiating party ('claimant') filing with the AAA a Demand for Arbitration, the administrative filing fee, and a copy of the applicable arbitration agreement from the parties' contract which provides for arbitration.
"(b) Arbitration pursuant to a court order shall be initiated by the initiating party filing with the AAA a Demand for Arbitration, the administrative filing fee, and a copy of any applicable arbitration agreement from the parties' contract which provides for arbitration.
"i. The filing party shall include a copy of the court order.
"ii. The filing fee must be paid before a matter is considered properly filed. If the court order directs that a specific party is responsible for the filing fee, it is the responsibility of the filing party to either make such payment to the AAA and seek reimbursement as directed in the court order or to make other such arrangements so that the filing fee is submitted to the AAA with the Demand.
"iii. The party filing the Demand with the AAA is the claimant and the opposing party is the respondent regardless of which party initiated the court action. Parties may request that the arbitrator alter the order of proceedings if necessary pursuant to R-32.
"(c) It is the responsibility of the filing party to ensure that any conditions precedent to the filing of a case are met prior to filing for an arbitration, as well as any time requirements associated with the filing. Any dispute regarding *791 whether a condition precedent has been met may be raised to the arbitrator for determination.
"....
"(e) Information to be included with any arbitration filing includes:
"i. the name of each party;
"ii. the address for each party, including telephone and fax numbers and e-mail addresses;
"iii. if applicable, the names, addresses, telephone and fax numbers, and e-mail addresses of any known representative for each party;
"iv. a statement setting forth the nature of the claim including the relief sought and the amount involved; and
"v. the locale requested if the arbitration agreement does not specify one."
Lydmar argues that Rule R-4 "makes clear that if a defendant in a lawsuit invokes the arbitration clause of a contract, then that defendant is the party who must file a demand with the AAA to initiate the arbitration, even though it was the plaintiff who filed suit." Lydmar's brief, at p. 8. Lydmar focuses this Court's attention on the language in Rule R-4 stating: "Arbitration pursuant to a court order shall be initiated by the initiating party filing with the AAA a Demand for Arbitration" and "[t]he party filing the Demand with the AAA is the claimant and the opposing party is the respondent regardless of which party initiated the court action." Lydmar does not, however, offer any analysis of how the language in those provisions places the burden to initiate the arbitration process on a defendant that has had a motion to compel arbitration granted. We do not find Lydmar's argument convincing.
In fact, we do not read anything in Rule R-4, or any other aspect of the Commercial Arbitration Rules of the AAA, placing the burden to initiate the arbitration process on a defendant that has successfully petitioned a circuit court to compel arbitration of the claims asserted against it. Rather, Rule R-4 makes clear that either party may demand arbitration by filing with the AAA a written demand for arbitration. Accordingly, as in Perot, we conclude that nothing in the Commercial Arbitration Rules of the AAA obligates the defendants to initiate the arbitration process.[2] The *792 defendants may certainly do so if they so choose, but we cannot say that they are obligated to do so under the arbitration provisions at issue in this case or under the Commercial Arbitration Rules of the AAA.[3]
Conclusion
The defendants submitted evidence showing that Lydmar signed a contract agreeing that all disputes between them related to the defendants' purchase of Lydmar's membership interest in Aldwych would be settled in arbitration and that the contract evidenced a transaction affecting interstate commerce. Lydmar did not refute that evidence, nor did it establish that the defendants waived their right to rely on those arbitration provisions. Therefore, the circuit court erred by returning the case to its active docket and effectively denying the defendants' motion to compel arbitration; its March 15, 2017, order so doing is hereby reversed and the cause remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
Stuart, C.J., and Murdock, Main, Wise, and Bryan, JJ., concur.
Bolin, Shaw, and Sellers, JJ., concur in the result.

Although the circuit court's order states that Lydmar had asserted claims, it appears that Lydmar asserted only one breach-of-contract claim against the defendants.

Although it is unnecessary for us in this case to address the issue whether Lydmar, as the plaintiff, has an obligation to initiate the arbitration process, we note that the amended version of the Commercial Arbitration Rules of the AAA does not appear to be substantially different in spirit from the pre-amended version of the rules as to that issue, i.e., who may initiate arbitration proceedings. Concerning the pre-amended version of Rule R-4, this Court stated in Northcom, Ltd v. James, 848 So.2d at 246-47 :
"Our caselaw clearly dictates that under the Commercial Arbitration Rules, the party asserting a legal claim, i.e., the plaintiff, must initiate arbitration proceedings.
" '[T]he Commercial Arbitration Rules state[ ] that the "initiating party (hereinafter claimant)" shall file the "appropriate filing fee" as mandated in the schedule accompanying the rules. That same rule later explains that after the "claimant" has stated the nature of the dispute, the respondent shall file an answering statement and send that statement to the claimant. The word "claimant" is defined in Black's Law Dictionary (6th ed. 1990) as "[o]ne who claims or asserts a right, demand or claim." The word "respondent" is defined in Black's as "one who makes an answer to a bill or other proceeding in equity" or one "who contends against an appeal." Considering these words in light of their plain meaning, we conclude that the "claimant" is the party who makes a demand upon another party and that the "respondent" is the party who must answer the allegations.
" 'If we apply these general definitions to the facts of this case, it would be awkward to interpret the Commercial Arbitration Rules to mean that Tucker [the defendant below] is the claimant. Such an interpretation would force Tucker to state the nature of the claims against itself. Equally as awkward, this interpretation would then force Phelps [the plaintiff below] to answer the very complaint that he filed against Tucker. It is unreasonable to believe that the parties in this case intended to apply the terms "initiating party" and "claimant" to Tucker, the party defending itself against Phelps. Judging from the plain meaning of these labels as they are used in the Rules and from what the parties intended by the terms "claimant" and "initiating party," it is clear that Phelps is the claimant and Tucker is the respondent.'
"Ex parte Dan Tucker Auto Sales, Inc., 718 So.2d [33,] 36 [ (Ala. 1998) ] (some alterations original; some alterations added). See also Huntley v. Regions Bank, 807 So.2d 512 (Ala. 2001) (rejecting Regions Bank's argument that Huntley, the defendant, failed to properly invoke the arbitration agreement and holding that Regions Bank, as the plaintiff, bore the burden of properly invoking the arbitration agreement); and Universal Underwriters Life Ins. Co. v. Dutton, 736 So.2d 564 (Ala. 1999) (holding that the plaintiffs were the 'claimants' under the AAA's Commercial Arbitration Rules and that the claimants, as the initiating parties, were responsible for advancing the filing fee)."
See also In re Bruce Terminix Co., 988 S.W.2d 702, 706 (Tex. 1998) ("It would be anomalous to require the party against whom relief is sought to present its opponent's case and pay a filing fee whose amount is based on the size of its opponent's claim. ... By agreeing to the AAA rules, [the parties to the arbitration agreement] placed the burden of initiating arbitration on the party seeking relief."); 1 Domke on Commercial Arbitration § 18:1 (3d ed. 2008) ("An initial question ... is whether the arbitration proceeding must be initiated by the party making the claim or by the party desiring the arbitration. Generally, it is the party seeking substantive relief which must initiate the arbitration, rather than the respondent."); and 3 Commercial Arbitration § 44:2 ("Where a contract does place the initial burden to commence arbitration [with the arbitrator] on either party, that duty to demand arbitration [with the arbitrator] rests with the party seeking relief."). This logic also appears to apply to the current version of the Commercial Arbitration Rules of the AAA.

In his concurrence in the result in Perot, Justice Murdock noted that, although a party in the position of the defendants "might be thought of as less likely to initiate an arbitration proceeding, its doing so would be comparable to a potential defendant filing a declaratory-judgment action in a court of law to resolve a dispute between it and a potential plaintiff." Perot, 991 So.2d at 1286 n. 3 (Murdock, J., concurring in the result).